The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Alan D. CLEMENTS,
Defendant-Appellee.

No. 83SA102.

Supreme Court of Colorado,
En Banc.

June 27, 1983.

Paul Q. Beacom, Dist. Atty., Kathryn J. Aragon, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

No appearance for defendant-appellee.

ROVIRA, Justice.

In this interlocutory appeal pursuant to C.A.R. 4.1, the People appeal an order of the Adams County District Court suppressing certain statements made by the defendant, Alan Clements, as well as a police officer's identification of the defendant. We reverse.

On June 21, 1982, at approximately 11:30 p.m., Officer McLaughlin of the Federal Heights Police Department observed an automobile bearing a temporary license plate. McLaughlin testified at the suppression hearing that he stopped the vehicle because the plate was torn and unreadable. He stated that from the time he observed the torn plate he intended to issue a summons for having an illegible license plate, pursuant to section 42–3–113(2), C.R.S. 1973.[1]

McLaughlin further testified that as he approached the vehicle, he shined a light on the plate and determined that it was valid. He stated, however, that he could not read the plate unless he stood directly over it and

___

1. Section 42–3–113(2), C.R.S.1973, provides:
   "Every number plate shall at all times be securely fastened to the vehicle to which it is assigned, so as to prevent the plate from swinging, and shall be parallel to the axles thereof and at a height not less than twelve inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible."

looked straight down at it. He then approached the defendant, who was driving the car, and told him why he had been stopped. Upon being asked for his driver's license and vehicle registration, the defendant stated that he had left them at home. McLaughlin then asked the defendant whether he had any other identification, and the defendant replied that he did not. The officer asked the defendant for his name, whereupon the defendant told him his name was Alan Clements. After McLaughlin talked with the police dispatcher, the defendant was arrested for operating a motor vehicle after his license had been revoked pursuant to the habitual traffic offender statute.[2]

■ The defendant was charged by information with driving after judgment prohibited.[3] He moved to suppress his statement concerning his name, as well as the officer's in-court identification, on the grounds that the detention exceeded the permissible scope of an investigatory stop under *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), and he had not been given a *Miranda*[4] warning prior to the officer's inquiry as to his name. The trial court granted the motion, holding that although the initial stop was permissible under *Stone, supra,* once the officer examined the temporary plate and determined that it was valid, he was no longer justified in continuing the detention. We disagree.

The undisputed testimony at the suppression hearing was that the temporary plate was torn and unreadable. Although McLaughlin testified that he was able to determine that the plate was valid, that does not change the fact that it was illegible. The police officer had probable cause to stop and issue a summons to the defendant when he observed that the plate was not readable. Consequently, the defendant was properly detained, and the demand for the driver's license was proper. *See* section 42–2–113, C.R.S.1973; *People v. McPherson,* 191 Colo. 81, 550 P.2d 311 (1976).

■ The trial court did not address the *Miranda* issue. Under *Miranda* and its progeny, a suspect must be advised of his right to remain silent and his right to counsel prior to custodial interrogation. However, the *Miranda* opinion expressly does not apply to "general on-the-scene questioning." The cases uniformly hold that *Miranda* warnings are not required in routine traffic stops, especially where, as here, the offense for which the defendant was stopped will result in only the issuance of a summons.[5] *See, e.g., Clay v. Riddle,* 541 F.2d 456 (4th Cir.1976); *Lowe v. United States,* 407 F.2d 1391 (9th Cir.1969); *Warren v. State,* 385 A.2d 137 (Del.1978); *State v. Woodard,* 387 So.2d 1066 (La.1980); *State v. Macuk,* 57 N.J. 1, 268 A.2d 1 (1970). *See also California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).

■ In *People v. Thornton,* 190 Colo. 397, 547 P.2d 1278 (1976), we held that where a defendant had been stopped for failing to turn right in a right-turn-only lane, there was no error in failing to give *Miranda* warnings prior to questioning, despite the fact that the police had enough information to raise a reasonable suspicion that the occupants of the car had been involved in a recent burglary. The same reasoning applies *a fortiori* to the case before us, where the only offense under investigation was a routine traffic violation.

We reverse the trial court's suppression order and remand for proceedings consistent with the views expressed in this opinion.

2.  Sections 42–2–202, 42–2–203, C.R.S.1973.

3.  Section 42–2–206(1), C.R.S.1973 (1982 Supp.).

4.  *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5.  In *People v. Clyne,* 189 Colo. 412, 541 P.2d 71 (1975), we held that the modern policy against custodial arrests and favoring the issuance of citations has been given effect by requiring the issuance of a penalty assessment notice or summons in ordinary traffic violations.