**The PEOPLE of the State of Colorado, Petitioner,**

v.

**T.H., Respondent.**

**No. 94SA347.**

Supreme Court of Colorado,
En Banc.

March 13, 1995.

John Suthers, Dist. Atty., Fourth Judicial Dist., David L. Geislinger, Deputy Dist. Atty., Colorado Springs, for petitioner.

David F. Vela, Colo. State Public Defender, Michael Salkind Jr., Deputy State Public Defender, Colorado Springs, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21,[1] we issued a rule directing the respondent, El Paso County District Court,

1. Pursuant to C.A.R. 4.1, the People originally filed an interlocutory appeal to challenge the district court's order suppressing the evidence. The prosecution thereafter filed a motion entitled "Motion to Dismiss Interlocutory Appeal and Refile as Petition for the Issuance of a Writ in the Nature of Prohibition and/or Mandamus." We granted this motion and now examine the trial court's ruling pursuant to C.A.R. 21.

Further, contrary to T.H.'s contention, double jeopardy does not bar this appeal. This case was set for trial on September 23, 1994. On the day of the trial, the district court conducted a pretrial hearing on T.H.'s pretrial motion to suppress evidence. At the commencement of this hearing, the district court stated: "I believe our agreement is we'll go ahead and hear the evidence of suppression, but I would be able to take note of that for trial, so it wouldn't be repeated if we got past the suppression stage." At the conclusion of the hearing, the trial court granted this mo-

to show cause why it should not be prohibited from issuing its order suppressing evidence of cocaine abandoned by the defendant, T.H., and seized by the police. The district court found that Officer Chaney's initial contact with T.H. constituted an investigatory stop and that the officer did not have reasonable suspicion to initially approach T.H. We hold that, because no seizure occurred until after the evidence was recovered, the district court erroneously suppressed the cocaine. We therefore make the rule absolute.

## I.

On March 18, 1994, at approximately 10:00 p.m., Officers Gary Hill and Olaf Chaney of the Colorado Springs Police Department were on patrol and were responding to a request by the owner of the Cloud Nine Lounge to control loitering in front of the establishment.[2] The officers observed two males, eating from a box of chicken and standing on the side of the Cloud Nine building that also contains the Pit Barbecue Restaurant.

In response to one of the men saying to the officers, "Hey, get [T.H.] away from me," Officer Chaney approached T.H., and asked him for identification. T.H. made a hand motion as if he were reaching into his pocket to retrieve a form of identification and instead took flight. Officer Chaney pursued T.H. on foot. During the pursuit, Officer Chaney observed T.H. toss a plastic baggie into the street which Officer Hill retrieved. The baggie contained cocaine.

T.H. was found several minutes later lying on his stomach in a brushy area. At this point, the officers arrested T.H. and searched him. The officers recovered a pager and approximately $500.

T.H. was thereafter charged with possession of a schedule II controlled substance in violation of section 18–18–204, 8B C.R.S. (1994 Supp.), and possession of a schedule II controlled substance with intent to dispense

tion, and the prosecution asserted that they were not prepared to proceed with the trial and instead would file an interlocutory appeal. The defense thereafter made a motion to dismiss the case which the court denied.

in violation of section 18–18–405, 8B C.R.S. (1994 Supp.).

In the juvenile proceeding brought against him, T.H. moved to suppress the evidence relating to the cocaine. The district court conducted a pretrial hearing on this motion on September 23, 1994. The district court suppressed the evidence, finding that Officer Chaney's initial contact with T.H. constituted an investigatory stop and that the officer did not have reasonable suspicion to initially approach T.H.

## II.

The two-fold inquiry presented here is (1) whether Officer Chaney's initial encounter with T.H. constituted an investigatory stop; and (2) if not, whether, at the time that T.H. fled and dropped the bag of cocaine, a seizure of T.H. had occurred within the meaning of the Fourth Amendment to justify suppressing the evidence.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which legitimized a brief investigatory stop based on reasonable suspicion of criminal activity, the Court additionally discussed how some police-citizen encounters do not implicate Fourth Amendment concerns at all:

> [N]ot all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16.

Further, Justice White, in his concurring opinion, added:

> There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.

*Id.* at 34, 88 S.Ct. at 1886 (White, J., concurring).

2. The Cloud Nine is located in Colorado Springs.

The principles governing a police-citizen encounter were also discussed in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983):

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.

*Id.* at 497–98, 103 S.Ct. at 1324 (citations omitted); *see also Immigration and Naturalization Serv. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (holding that an interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure).[3]

*California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), involved a situation virtually identical to the one presented here. In *Hodari*, the Supreme Court held that a seizure does not occur when a defendant being chased by the police continues to flee. *Hodari* involved a juvenile who fled upon seeing an approaching unmarked police car. The officers chased Hodari on foot, and Hodari threw away a small rock of crack cocaine that the police later retrieved. The Supreme Court held that, at the time Hodari tossed away the drugs, there was no seizure of Hodari because he had not been physically restrained and had not submitted to the officer's show of authority. *Id.* at 624–26, 111 S.Ct. at 1549–51. In making this determination, the Court reasoned that a seizure "requires either physical force ... or, where that is absent, submission to the assertion of authority." *Id.* at 626, 111 S.Ct. at 1551 (emphasis omitted). The Supreme Court additionally concluded that the police lawfully recovered the drugs which Hodari had abandoned, and that the trial court had erred in suppressing the evidence. *Id.* at 629, 111 S.Ct. at 1552. The Supreme Court stated that, even if the pursuit of Hodari constituted an official show of authority enjoining Hodari to halt, there still was no seizure until he was tackled because he did not comply with that injunction. *Id.*

■ The factual scenario presented here parallels the encounter in *Hodari*. Viewing the totality of the circumstances surrounding Officer Chaney's initial encounter with T.H., we conclude that T.H. was not subjected to a Fourth Amendment investigatory stop. The officer did not approach T.H. based on an articulable suspicion that he was committing a criminal act. Rather, the officer approached T.H. for identification purposes. Officer Chaney acted within the proper scope of his authority when he approached T.K. and requested identification. The police officer approached in a non-threatening manner and requested, but did not demand, identification from T.H. The contact lasted several seconds, and the officer made no attempt to detain T.H. The brief confrontation between T.H. and the officer was a mere encounter, and did not escalate to anything more because T.H. was not further detained.

■ The officers also acted appropriately in pursuing T.H. when he took flight. During his flight, T.H. abandoned the baggie of cocaine. The police officers thereafter had probable cause to arrest him. Further, the cocaine was abandoned while T.H. was fleeing and before T.H. was stopped or arrested. Therefore, the cocaine was not the fruit of a seizure and was lawfully recovered by the police.

---

3. We have, in accordance with decisions by the Supreme Court, identified three categories of police-citizen encounters requiring varying levels of justification and protection: (1) an arrest which is a highly intrusive or lengthy search or detention that must be supported by probable cause of criminal activity; (2) restraints which are less than arrests, such as a *Terry*-type investigatory stop, which are based upon a suspicion of criminal activity and trigger Fourth Amendment scrutiny; and (3) non-coercive exchanges between police and citizens that are not encompassed within the Fourth Amendment because the citizen's liberty is not restrained. *See People v. Trujillo*, 773 P.2d 1086 (Colo.1989).

Based on this sequence of events, the police officer's initial contact did not rise to the level of an investigatory stop and therefore the principles surrounding an investigatory stop are inapplicable. We therefore conclude that the trial court erred in applying a reasonable suspicion standard in evaluating the police officer's initial contact with T.H. We further hold that the trial court erred in holding that a seizure of the defendant took place implicating the Fourth Amendment.[4] Rather, we hold that, because no seizure occurred until after the evidence was recovered, there is no Fourth Amendment issue relating to the introduction of the evidence.

We conclude that the police officer's initial contact with T.H. is the type of police-citizen encounter which does not implicate the Fourth Amendment. Because we hold the initial encounter with T.H. was lawful, we further conclude that the trial court erroneously suppressed the cocaine. We therefore make the rule absolute.

**4.** *See also United States v. McCarthur,* 6 F.3d 1270, 1276 (7th Cir.1993) (finding no seizure where the officers approached "in [a] nonconfrontational manner" and the officers "did not display any weapons"); *United States v. Locklin,* 943 F.2d 838, 839 (8th Cir.1991) (officers "made no demands" and "merely asked Locklin for his name"); *United States v. Evans,* 937 F.2d 1534, 1537 (10th Cir.1991) (defendant " 'was approached [by the police officers] in a friendly conversational manner,' " and there were " 'no threats ... [or] promises ... given' "); *Gomez v.* *Turner,* 672 F.2d 134, 142–44 (D.C.Cir.1982) (concluding that a police procedure authorizing an approach and request for identification does not constitute a show of authority sufficient to convert the contact into a seizure); *People v. Hollman,* 581 N.Y.S.2d 619, 624 (N.Y.1992) ("[P]olice officers have fairly broad authority to approach individuals and ask questions relating to identity or destination, provided that the officers do not act on whim or caprice and have an articulable reason not necessarily related to criminality for making the approach.").