The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Thomas REDINGER, Defendant–
Appellee.

No. 95SA168.

Supreme Court of Colorado,
En Banc.

Oct. 30, 1995.

John Suthers, District Attorney, Fourth Judicial District, Ann C. Joyce, Deputy District Attorney, Colorado Springs, for Plaintiff–Appellant.

Terry L. Perlet, Colorado Springs, for Defendant–Appellee.

Justice KIRSHBAUM delivered the Opinion of the Court.

In this interlocutory appeal filed pursuant to C.A.R. 3 and 4.1, the People seek review of an order entered by the El Paso County District Court prohibiting the introduction

into evidence of a plastic bag containing methamphetamine and a statement made by the defendant, Thomas Redinger. The evidence was seized and the statement was made after an initial investigatory stop of a vehicle owned and driven by Redinger. The trial court ruled that although the investigating officer, State Patrol Officer Russell Wise, initially had reasonable suspicion to stop Redinger's vehicle, Wise later acted improperly in requesting Redinger to produce a driver's license, registration, and proof of insurance. We affirm the trial court's ruling.

I

At approximately 2:00 a.m. on January 7, 1995, while operating his patrol car on Interstate Highway 25 in El Paso County, Colorado, Wise observed Redinger's vehicle traveling along the highway. Because Wise did not see a license plate or temporary sticker on the rear of Redinger's vehicle, he determined that Redinger had violated provisions of the Colorado Uniform Motor Vehicle Law, sections 42-1-101 to 42-4-1904, 17 C.R.S. (1993 & 1995 Supp.) (hereafter the "motor vehicle law"), regarding the display of valid permanent or temporary license plates on motor vehicles. See §§ 42-3-123, -133, 17 C.R.S. (1995 Supp.).[1] Wise activated the overhead lights on his police car and Redinger drove to the side of the road. Wise then pulled over behind Redinger, got out of the patrol car, and walked toward Redinger's vehicle. As he neared Redinger's vehicle Wise observed a valid temporary registration plate properly displayed in the rear window on the driver's side thereof.

Wise continued walking until he reached the driver's side of Redinger's vehicle. Wise explained why he had stopped Redinger's vehicle and requested Redinger to produce a driver's license, registration, and proof of insurance. When Redinger removed a wallet from a jacket pocket, a small clear plastic bag containing a white powdery substance fell onto Redinger's leg. Redinger handed the wallet to Wise and pushed the plastic bag onto the seat of the car.

Having observed these events, Wise directed Redinger to step out of the car. Wise retrieved the plastic bag and asked Redinger to identify the contents thereof. Redinger said the bag contained crystal methamphetamine. Redinger was later charged with one count of possession of a Schedule II controlled substance, a class 4 felony, in violation of sections 18-18-204 and 18-18-405(2)(a)(I), 8B C.R.S. (1986 & 1994 Supp.).

Prior to trial Redinger filed a motion to suppress the contents of the plastic bag and his statement identifying the substance as methamphetamine. At a hearing on that motion Redinger introduced evidence to the effect that Wise and other area law enforcement officials frequently stopped motor vehicles at the location in question on the basis of alleged traffic infractions, that in the course of obtaining information from the drivers of those motor vehicles such officers had at times discovered various kinds of controlled

---

1. The record is unclear as to exactly which provision of the motor vehicle law Wise suspected had been violated by Redinger. At the suppression hearing, Wise testified that when he stopped Redinger's vehicle, he suspected a violation of "the statute [which] requires that the vehicle registration be visible to the read [sic] of the vehicle for at least 200 feet behind the vehicle, and be permanently attached to the vehicle." Wise further testified that he did not know the particular section number of the statute pertaining to non-visible registration.

Title 42 contains no provision requiring visibility of a registration plate from at least 200 feet behind a vehicle, although § 42-4-206(3), 17 C.R.S. (1995 Supp.), requires a rear registration plate to be properly illuminated so that it is "clearly legible" from a distance of 50 feet to the rear of a motor vehicle. In its ruling on the suppression motion, the trial court considered § 42-3-123, 17 C.R.S. (1995 Supp.), which requires license plates to be "clearly visible" and attached to vehicles. Rule 7, 1 C.C.R. 204-14 (1993) sets forth similar requirements as to temporary registration permits, providing in part that such permits may be affixed to motor vehicles in the lower left-hand corner of the rear windshield or in the place of a permanent registration plate, so long as the temporary permit is "clearly visible." In its brief to this court, the people suggest that § 42-3-133(1)(a), 17 C.R.S. (1995 Supp.), is relevant to Wise's conduct. That statute prohibits the operation of an unregistered vehicle or a vehicle not displaying its assigned and current license plates. Violations of either of these statutory provisions are classified as "class B traffic infraction[s]." §§ 42-3-123(3), 133(2)(a), 17 C.R.S. (1995 Supp.). Traffic infractions are civil, not criminal, matters. § 42-4-1701(1), 17 C.R.S. (1995 Supp.).

substances, and that convictions for violations of laws prohibiting possession of controlled substances had been obtained as the result of such activities. In support of his suppression motion Redinger argued that Wise's stop of his vehicle was pretextual. The People argued that when Wise stopped Redinger's vehicle he had a reasonable suspicion that Redinger had violated provisions of the motor vehicle law regulating the display of license plates.

The trial court rejected Redinger's argument that Wise's decision to stop Redinger's vehicle was pretextual. To the contrary, the trial court held that the stop was justified by Wise's reasonable suspicion that Redinger had violated provisions of the motor vehicle law. The trial court further concluded that Wise had no authority to question Redinger after Wise discovered that Redinger had not violated the motor vehicle law.

## II

The People argue that Wise was authorized to detain and question Redinger after

Wise learned that no violation of the motor vehicle law had occurred. We disagree.

■ In *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), we recognized that police officials may, consistent with Fourth Amendment guarantees, require drivers of motor vehicles to stop and to respond to investigatory questions if the official has a reasonable suspicion that the individual has committed or is about to commit a crime, if the purpose of the detention is reasonable, and if the detention itself is reasonable when considered in light of the purpose for the investigatory stop. *Stone,* 174 Colo. at 509, 485 P.2d at 497.[2] Such limited governmental intrusion without probable cause is justified as a consequence of the mobile nature of motor vehicles and the desire to encourage conscientious police investigations. The stop, which is investigatory rather than accusatory in nature, allows the police official to determine whether the initial reasonable suspicion was justified.[3]

**2.** The three-part test we adopted in *Stone* parallels the two-part test articulated by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), for purposes of determining when a police official may require persons to respond to investigatory questioning even though the official does not have probable cause to believe an offense has been or is being committed. *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879.

**3.** The People do not argue that Wise's conduct in stopping Redinger's vehicle and in requesting Redinger to supply information does not implicate Fourth Amendment issues. Nor do the People suggest that Redinger voluntarily consented to Wise's questioning. Redinger was stopped because he was the specific target of an investigation. When he was no longer the target of any investigation, Redinger was nevertheless detained and questioned.

Investigatory stops are distinguishable from consensual interviews. The former are based upon suspicion of illegal conduct. *People v. Trujillo,* 773 P.2d 1086, 1089 (Colo.1989); *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A consensual interview involves no restraint of an individual's liberty, but rather consists of an encounter which is voluntary in nature. *See Trujillo,* 773 P.2d at 1089. If a reasonable person would feel free to unilaterally terminate an encounter with a police official, the encounter is consensual. *Florida v. Bostick,* 501 U.S. 429, 434–35, 111 S.Ct. 2382, 2386–87, 115 L.Ed.2d 389 (1991); *see California v. Hodari,* 499

U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991).

In *People v. T.H.,* 892 P.2d 301 (Colo.1995), we held that the Fourth Amendment was not implicated when a police official, at the request of a private citizen, approached the defendant and requested his identification. We determined that no investigatory stop had occurred because the officer did not approach the defendant based on an articulable suspicion of illegal activity, *id.* at 303, and because the defendant's liberty had not been restrained by the officer, *id.* at 302.

In this case the contact between Wise and Redinger was initiated because Wise formed a reasonable suspicion that Redinger had violated the motor vehicle law. Wise effectuated the stop by activating the overhead lights on his police vehicle. At that point, a reasonable motorist in Redinger's position would not have felt free to ignore Wise and continue driving. Indeed, § 42–4–107, 17 C.R.S. (1995 Supp.), requires individuals to comply with a police official's "lawful order or direction."

When he approached Redinger, Wise requested a driver's license, registration, and proof of insurance. No events had occurred which could have reasonably apprised Redinger that the production of identifying documents was optional. Wise had obtained no additional information to justify the further detention and questioning of Redinger. Because Wise decided to stop and obtain information from Redinger on the basis of a reasonable suspicion of wrongdoing, Redinger's Fourth Amendment rights were implicated throughout the transaction.

The trial court concluded that Wise's initial stop of Redinger's vehicle satisfied the *Stone* criteria. Redinger has not challenged this conclusion, and we adopt it for purposes of this appeal. The trial court also concluded that when Wise realized his initial observation was erroneous the purpose of the investigatory stop was satisfied and Wise no longer had any reason to detain and interrogate Redinger. We agree with this conclusion under the circumstances of this case.

We have not had occasion to consider the question of the extent to which an official who has properly initiated an investigatory stop of a motor vehicle based on reasonable suspicion that the driver thereof has violated the motor vehicle law may detain and interrogate the driver after the official learns that the initial suspicion is ill-founded. In *People v. Clements*, 665 P.2d 624 (Colo.1983), we reversed the trial court's determination that a police official's initial reasonable suspicion that a detained driver had committed certain traffic violations had dissipated prior to the time the officer questioned the driver about the vehicle. In *Clements*, a police official stopped the defendant's vehicle upon observing a torn and unreadable temporary license plate. As he approached the stopped vehicle the official discovered that the temporary license plate was valid. However, he confirmed that the license plate was illegible. Observing that the validity of the temporary license plate did not alter the fact that it was illegible and therefore did not satisfy relevant provisions of the motor vehicle law, we held that the official had probable cause to issue a summons to the driver on the basis of the fact that the plate was not readable. *Id.* at 625. We also held that the official's probable cause justified further detention of the defendant and the demand for his production of a driver's license. *Id.*

In *People v. Cerda*, 819 P.2d 502 (Colo. 1991), we affirmed the trial court's determination that, at the time an officer stopped a motor vehicle, he had no reasonable suspicion that the driver had committed any offense. *Id.* at 504. We also affirmed the trial court's conclusion that because the initial stop was improper, all subsequent detention and questioning of the driver of the vehicle was unwarranted. *Id.* at 503–04. Neither *Clements* nor *Cerda* controls the issue here presented.

The case of *United States v. McSwain*, 29 F.3d 558 (10th Cir.1994), presents a factual matrix substantially similar to the circumstances giving rise to this case. In *McSwain*, an officer initially stopped a vehicle travelling along a Utah highway because he observed the absence of either a front or rear license plate and because the expiration date on a temporary registration sticker affixed to the rear window of the vehicle appeared to be covered with reflective tape that rendered the registration sticker illegible. As the officer approached the stopped vehicle he discovered that the temporary registration sticker was from Colorado and that the reflective tape was in fact a new device adopted by that state to prevent alteration of expiration dates. The officer nevertheless requested the driver to produce identification and vehicle registration.

When the driver indicated that he did not have a driver's license, the officer conducted a computer check and learned that the driver's license had been suspended. The officer then asked the driver and a passenger in the vehicle several additional questions, including whether they had any alcohol, firearms, or drugs, and obtained McSwain's permission to search the trunk of the vehicle. In the course of searching a duffel bag located in the trunk, the officer found crack cocaine, a set of scales, and a gun.

At trial, McSwain filed a motion to suppress the seized evidence on the ground that the detention and interrogation of McSwain after the officer learned that no traffic offense had been committed violated the Fourth Amendment. The trial court denied the motion. The court of appeals reversed, holding that the initially valid stop evolved into an unreasonable detention when the officer recognized that McSwain's vehicle in fact displayed a valid registration certificate. *McSwain*, 29 F.3d at 561. The court reasoned that once the purpose of the valid stop was satisfied, any further detention of the vehicle to question McSwain or to request information was not warranted. *Id.*

The court recognized the continuing validity of prior decisions establishing the general rule that a police official who stops a vehicle on reasonable suspicion that a traffic offense has occurred may undertake minimally intrusive conduct such as requesting a driver's license and vehicle registration from the driver of the vehicle. *See, e.g., United States v. Rivera,* 867 F.2d 1261, 1263 (10th Cir.1989); *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988). However, as the following portion of its opinion reflects, the court distinguished those cases from the circumstances presented in *McSwain:*

> [These cases] all involve situations in which the officer, at the time he or she asks questions or requests the driver's license and registration, still has some "objectively reasonable articulable suspicion" that a traffic violation "has occurred or is occurring." ... Such cases stand in sharp contrast to the facts of the instant case: [the officer's] reasonable suspicion regarding the validity of Mr. McSwain's temporary registration sticker was completely dispelled *prior* to the time he questioned Mr. McSwain and requested documentation. Having no "objectively reasonable articulable suspicion that illegal activity ha[d] occurred or [was] occurring," ... [the officer's] actions in questioning Mr. McSwain and requesting his license and registration exceeded the limits of a lawful investigative detention and violated the Fourth Amendment.

*McSwain,* 29 F.3d at 561–62 (citations omitted) (emphasis in original).

Several other courts have also recognized that once the purpose of an initially valid investigatory stop has been satisfied, any further detention or questioning of the driver of a vehicle constitutes unreasonable and therefore unlawful detention prohibited by the Fourth Amendment. *See United States v. Castillo,* 864 F.Supp. 1090, 1096–97 (D.Utah 1994) (sequence of events is critical; when the objectives of the initial stop have been accomplished, no further police conduct is constitutionally permissible); *Powell v. State,* 649 So.2d 888, 889 (Fla.Dist.Ct.App. 1995) (continued detention illegal if the reason for the initial stop is resolved); *Rouse v.* *State,* 643 So.2d 696, 697–98 (Fla.Dist.Ct. App.1994) (initial stop for traffic detention can last no longer than the time necessary to write traffic citation; subsequent questioning and pat-down was illegal and cocaine discovered in plain view after illegal questioning and pat-down must be suppressed); *see also State v. Dominguez–Martinez,* 321 Or. 206, 895 P.2d 306, 309 (1995) (further detention and questioning of driver subsequent to satisfaction of purpose for initial valid traffic stop prohibited by statute); *State v. Hill,* 606 A.2d 793, 795 (Me.1992) (officer's request for license and registration did not exceed scope of valid traffic stop based upon failure to display a rear license plate, where court found that officer's observation of unilluminated temporary license plate in rear window of vehicle did not dispel initial reasonable suspicion that the driver was unlicensed or operating an unregistered vehicle); *State v. Farley,* 308 Or. 91, 775 P.2d 835, 836 (1989) (officer's statutory authority to inquire ceased when he observed valid temporary permit on vehicle stopped for having no visible license plates); *State v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237, 1239–40 (officer had no authority to request driver's license because initial suspicion that vehicle was not properly registered was dispelled when he observed valid temporary permit inside rear windshield), *cert. denied,* 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984); *cf. United States v. Place,* 462 U.S. 696, 707–10, 103 S.Ct. 2367, 2644–46, 77 L.Ed.2d 110 (1983) (prolonged investigatory detention exceeds scope of permissible *Terry* stop).

■ We find the rationale of these cases to be persuasive. The basis for the principle that, consistent with Fourth Amendment jurisprudence, a police officer may detain and interrogate a driver of a motor vehicle on less than probable cause to believe an offense has been or is being committed is the conclusion that narrowly limited governmental intrusion into the conduct of motor vehicle drivers is warranted when a government official has reasonable grounds to investigate that conduct. When, as here, the purpose for which the investigatory stop was instituted has been accomplished and no other reasonable suspicion exists to support further investigation, there is no justification for con-

tinued detention and interrogation of citizens.[4]

█ In this case, Wise stopped Redinger's vehicle because Wise had a reasonable suspicion that Redinger had violated the motor vehicle law. At the moment he stopped Redinger's vehicle Wise was authorized to investigate that reasonable suspicion. Prior to questioning Redinger, Wise learned from his investigation that his initial suspicion was unfounded and that no violation of the motor vehicle law had occurred. The purpose of the initial investigation having been satisfied, and in the absence of any other basis for detention or questioning of Redinger, Wise's conduct in requiring Redinger to produce information without either reasonable suspicion or probable cause was unwarranted.

### III

For the foregoing reasons, we affirm the trial court's ruling.

VOLLACK, C.J., dissents.

MULLARKEY, J., dissents, and KOURLIS, J., joins the dissent.

Chief Justice VOLLACK dissenting:

The majority affirms the trial court's ruling suppressing a plastic bag containing methamphetamine and a statement made by the defendant, Thomas Redinger (Redinger). The majority holds that when "the purpose for which the investigatory stop ... has been accomplished and no other reasonable suspicion exists to support further investigation, there is no justification for continued detention and interrogation of citizens." Maj. op. at 85. This rationale presumes that Trooper Russell Wise (Officer Wise) engaged in a Fourth Amendment investigatory stop when he requested that Redinger produce his driver's license, registration, and proof of insurance. I dissent because Officer Wise's conduct in merely asking Redinger for identifying information did not rise to the level of a Fourth Amendment investigatory stop, and the trial court erred in suppressing the evidence.

### I.

On January 7, 1995, at approximately 2:00 a.m., Officer Wise of the Colorado State Patrol was on routine patrol and observed Redinger driving a motor vehicle with no visible license plate on either the front or rear of the vehicle. At a hearing on Redinger's motion to suppress the contraband and the statement, Officer Wise testified that he stopped Redinger because he did not observe any license plate or temporary registration sticker on Redinger's vehicle. Officer Wise pulled the defendant's vehicle over to the side of the road. As Officer Wise approached Redinger's vehicle, he noticed a temporary license plate sticker on the rear window of the driver's side. Officer Wise stated to the defendant his reason for the stop and asked Redinger to produce a driver's license, registration, and proof of insurance.[1] Redinger reached into his jacket pocket to remove his wallet, and as he pulled out his wallet, a small clear plastic bag filled with a white powdery substance fell on his leg. Redinger handed Officer Wise his license and pushed the plastic bag off his leg and onto the seat.

After observing Redinger's action, Officer Wise requested that Redinger step out of the car. Officer Wise retrieved the plastic bag and asked Redinger what was in the bag.

---

**4.** Section 42–2–115, 17 C.R.S. (1995 Supp.), which prohibits drivers from refusing to display a driver's license to a police officer who reasonably suspects that the driver is committing or has committed a violation of the motor vehicle law, lends support to this conclusion. This statute provides that police officials may demand production of identifying documents from motorists only if such demand is justified by a reasonable suspicion of a violation of the motor vehicle law. To hold that Wise's request for information was justified after his reasonable suspicion had dissipated eviscerates § 42–2–115 by in effect autho-

rizing a request for identification in any circumstance. *Cf. Stone v. People*, 174 Colo. 504, 511, 485 P.2d 495, 498 (1971) ("[T]his opinion does not grant free license to law enforcement officers to stop an individual to obtain identification or address.").

**1.** Under Colorado law, motorists are required to carry a driver's license, registration, and proof of insurance when operating a motor vehicle. §§ 42–2–101(3), 42–3–111(5), 17 C.R.S. (1993); § 10–4–705(1), 4A C.R.S. (1994).

Redinger told Officer Wise that the white powdery substance was crystal methamphetamine. Redinger was thereafter charged by information with one count of possession of a schedule II controlled substance, a class 4 felony, in violation of sections 18–18–204 and 18–18–405(2)(a)(I), 8B C.R.S. (1994 Supp.).

The defendant moved to suppress the contraband and the statement which the officer had obtained at the time of the stop. At the suppression hearing, the trial court heard testimony from Officer Wise and three lay witnesses. On May 8, 1995, the trial court ruled that the initial stop was proper. The trial court found that Officer Wise had an articulable basis in fact for suspecting that criminal activity had occurred since the officer did not see a valid temporary license plate when he stopped the defendant's vehicle. The trial court held, however, that once the officer saw the valid temporary license plate, he was no longer justified in continuing the detention. The trial court suppressed the contraband and the defendant's statement to the officer on the ground that Officer Wise had exceeded the scope of the investigatory stop by requesting Redinger's driver's license, registration, and proof of insurance.

## II.

The trial court, in its conclusion of law, focused on the three-pronged test for investigatory stops articulated in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971): "(1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose." *Id.* at 509, 485 P.2d at 497.

The trial court held that the first prong of the *Stone* test was satisfied, but that the People had failed to satisfy the other two prongs of the test. The trial court found that Officer Wise had a reasonable suspicion

that the defendant had committed a crime when he did not see any valid visible license plate on the defendant's vehicle. The trial court concluded, however, that once Officer Wise noticed the valid temporary license plate, the reason for the investigatory stop became moot and further detention was unreasonable and not related to the original stop. The trial court therefore suppressed the evidence and Redinger's statement as the product of an unreasonable stop in violation of the Fourth Amendment.

The trial court correctly found that Officer Wise had a reasonable suspicion that Redinger had committed a crime when he stopped Redinger for not displaying a valid license plate on his vehicle.[2] However, the trial court erred in ruling that Officer Wise's subsequent questioning of the defendant violated the Fourth Amendment's protection against unreasonable search and seizure. The trial court's application of *Stone*'s Fourth Amendment analysis to Officer Wise's subsequent questioning of Redinger was erroneous because that questioning did not rise to the level of a Fourth Amendment investigatory stop.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the landmark case which held that investigatory stops implicate the Fourth Amendment, the United States Supreme Court noted that some encounters between police and citizens do not implicate Fourth Amendment issues:

> [N]ot all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

*Id.* at 19 n. 16, 88 S.Ct. at 1879 n. 16. The Court elaborated on this proposition in *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382,

---

**2.** Failure to display a license plate or temporary registration sticker on a vehicle is a class B traffic infraction which technically is a civil, not criminal, matter. *See* § 42–3–123, 17 C.R.S. (1995 Supp.), superseding § 42–3–113, 17 C.R.S. (1993); § 42–3–133(1)(a), 17 C.R.S. (1995 Supp.), superseding § 42–3–122(1)(a), 17 C.R.S. (1993).

However, suspected traffic infractions are treated the same as suspected crimes for Fourth Amendment purposes of reasonable suspicion to stop the defendant's vehicle. *See, e.g., People v. Corpany,* 859 P.2d 865, 870 (Colo.1993); *People v. Clements,* 665 P.2d 624, 625 (Colo.1983).

115 L.Ed.2d 389 (1991), in which it stated that

> even when officers have no basis for suspecting a particular individual, they may generally ask . . . to examine the individual's identification . . . as long as the police do not convey a message that compliance with their request is required.

*Id.* at 434–35, 111 S.Ct. at 2386 (citations omitted). The Court held in *Bostick* that the Fourth Amendment was not implicated unless "the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Id.* at 437, 111 S.Ct. at 2387 (quoting *Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988)). In *Bostick,* the Court found that the Fourth Amendment was not implicated when police officers boarded a bus and requested identification from a passenger thereon. *Id.*

In determining whether Officer Wise implicated Fourth Amendment issues by asking Redinger to produce his license and registration, our recent decision in *People v. T.H.,* 892 P.2d 301 (Colo.1995), is helpful. In *T.H.,* police officers observed two young men standing at the side of a building. In response to one of the men saying to the officers, "Hey, get [T.H.] away from me," one of the officers approached T.H. and asked him for identification. T.H. made a hand motion as if he were reaching for identification and instead ran away from the officers. While one of the officers pursued T.H., T.H. tossed a plastic bag containing cocaine into the street.

We held in *T.H.* that the officers' initial contact with the defendant did not rise to the level of a Fourth Amendment investigatory stop, as the officers did not approach T.H. based on an articulable suspicion that he was committing a criminal act. *Id.* at 303. Rather, the officers approached T.H. for identification purposes only. Because the brief confrontation between T.H. and the officers was a mere encounter, this court held that the principles surrounding a Fourth Amendment investigatory stop were inapplicable. *Id.* at 304.

Similarly here, after Officer Wise noticed the valid temporary license plate on Redinger's car, he did not approach Redinger based on an articulable suspicion that Redinger was committing a criminal act. Instead, Officer Wise merely approached Redinger to explain why he had initially stopped Redinger, and to request routine identifying information typically requested by an officer as part of standard police procedures. Because motorists are required by state law to carry a driver's license, registration, and proof of insurance when operating a motor vehicle, Officer Wise's request for such documents was proper. Furthermore, the record does not indicate that Officer Wise communicated to Redinger that he was not at liberty to leave. Thus, Officer Wise did not conduct a Fourth Amendment investigatory stop by merely asking Redinger for identifying information.

This case is distinguishable from *United States v. McSwain,* 29 F.3d 558 (10th Cir. 1994), cited by the majority. Maj. op. at 84. The officer in *McSwain* did more than merely ask the defendant driver for identifying information. There, the officer asked the driver whether he had just purchased the vehicle or whether he was taking it for a test drive. *McSwain,* 29 F.3d at 560. The officer then asked the driver for identification and vehicle registration. *Id.* After the driver produced his identification and vehicle registration, the officer asked the driver and his passenger where they had been. *Id.* The driver told the officer that he and his passenger had been in Las Vegas, Nevada, but the officer observed on the front seat a receipt dated the prior day from a Jiffy Lube in Pasadena, California. *Id.* The officer then returned to his patrol car to request a computer check, which indicated that the driver had a suspended driver's license and a prior record for drug and gun violations and assaults. *Id.* When the officer returned to the driver's vehicle, he inquired further as to the driver's residence and whether the driver was "packing" any alcohol, firearms, or drugs in the vehicle. *Id.* After the driver responded in the negative, the officer obtained the driver's consent to search the vehicle. *Id.*

The officer in *McSwain* not only asked the driver for identifying information, he also questioned the driver regarding his itinerary and the contents of his vehicle. Such questioning was not a mere request for identification, but was an interrogation that constituted an investigatory stop. The *McSwain* court therefore found a basis for holding that the officer's "actions in *questioning* [the driver] and requesting his license and registration exceeded the limits of a lawful investigative detention and violated the Fourth Amendment." *Id.* at 561–62 (emphasis added).

The majority cites other cases that are similarly distinguishable. In *United States v. Castillo*, 864 F.Supp. 1090 (D.Utah 1994), the driver gave a valid driver's license and registration to the officer, but the officer continued to question the driver regarding matters unrelated to the traffic stop because the officer suspected that the driver's customized truck contained a hidden compartment for narcotics. In *State v. Dominguez–Martinez*, 321 Or. 206, 895 P.2d 306 (1995), an officer stopped a driver for a defective signal light. After obtaining a valid driver's license and registration, the officer continued to question the driver and passenger about drug trafficking because the automobile exhibited characteristics associated with drug trafficking. In both cases, the courts did not invalidate the officer's request for a driver's license and registration; they only invalidated the subsequent questioning that was unrelated to the traffic stop.

In *Powell v. State*, 649 So.2d 888 (Fla.Dist.Ct.App.1995), after the officer realized that the vehicle displayed a temporary license plate, the officer nevertheless retrieved a drug detecting police dog to search the vehicle for narcotics. This case did not involve a mere request for identification but involved a full search and seizure of the driver's vehicle. Similarly, in *Rouse v. State*, 643 So.2d 696 (Fla.Dist.Ct.App.1994), after the officer finished giving the defendant a traffic citation, the officer questioned the defendant and conducted a pat-down search. Again, this case involved a full search of the defendant's person rather than a mere request for identifying information.

All these cases involve officers who not only requested identifying information from the defendants, but who implicated the Fourth Amendment by asking questions unrelated to the investigatory stop or by conducting searches without probable cause. In contrast, Officer Wise in the current case merely explained to Redinger why he had been stopped and asked Redinger for identifying information.

As discussed above, Officer Wise's actions in simply requesting Redinger's identifying information, without more, did not rise to the level of an investigatory stop and therefore did not violate the Fourth Amendment.[3] For the reasons expressed, I dissent.

Justice MULLARKEY dissenting:

I respectfully dissent from the majority's opinion which upholds the trial court's suppression of a plastic bag containing methamphetamine. I agree with Chief Justice Vollack's dissent that Officer Wise's conduct in requesting Redinger's license and registra-

---

**3.** Even under a Fourth Amendment analysis, an officer's request for a motorist's driver's license and registration does not unconstitutionally exceed the scope of a valid investigatory stop. In *State v. Hill*, 606 A.2d 793 (Me.1992), a police officer pulled over a vehicle after he did not observe a discernible rear license plate. As the officer approached and just before reaching the cab of the truck, he noticed an unilluminated license plate in the rear window. The officer nevertheless asked the driver for his license and registration. The driver moved to suppress the officer's testimony based on the fact that the officer's reasonable suspicion had dissipated before he requested the defendant's license and registration. *Id.* at 795. The court concluded that the police officer did not exceed the scope of

a valid investigatory stop when he asked to see the defendant's license and registration. The Supreme Court of Maine reasoned:

> [O]nce a defendant has been validly seized, the scope of subsequent police conduct must be ... evaluated to determine whether it is reasonable under all the circumstances.... In this case, Hill was validly stopped for a suspected traffic violation. Officer Low then sought to ensure that Hill was neither unlicensed nor operating an unregistered vehicle. Balancing this significant state interest against the minimal further intrusion of asking Hill for the documents, we hold that Officer Low did not unreasonably intrude on Hill's Fourth Amendment rights.

*Id.* (citations omitted).

tion was proper and that the trial court erred in suppressing evidence. I write separately because I differ on the grounds for my dissent. I would hold that a police officer may request to see a driver's license and registration in a routine traffic stop if the stop is lawful, notwithstanding that "reasonable suspicion" has dissipated by the time the officer makes the request. I differ from Chief Justice Vollack's dissent in that I view the stop, and the subsequent request, as one continuing event which implicates the Fourth Amendment from start to finish. However, I would find that Officer Wise's routine request falls within the reasonable scope of the initial, lawful stop and, consequently, is not violative of the Fourth Amendment.

Both the majority and the dissent invoke an overly-formalized view of the underlying factual scenario. The interaction between Officer Wise and Redinger is properly viewed as a brief sequence of events that transpired almost instantaneously and that cannot be compartmentalized for Fourth Amendment analysis purposes.[1] First, I do not consider the initial stop and the request for license and registration documentation to constitute two separate events interrupted by Officer Wise's spotting of a temporary license plate and tags on Redinger's automobile. Nor do the facts comprise an evolving detention where different phases of the officer/citizen interaction fall into neat compartments for Fourth Amendment purposes. *See People v. Thomas*, 839 P.2d 1174, 1177 (Colo. 1992) (holding that facts stemming from a traffic infraction stop commenced as an investigative detention, turned into a consensual encounter, and culminated as an arrest, all with different ramifications under the Fourth Amendment). Specifically, the situation did not evolve into a consensual encounter—Officer Wise did not inform Redinger that he was free to leave and that presentment of his license and registration was optional rather than required. Hence, the facts do not support the proposition that the Fourth Amendment is implicated in the stop but not in Officer Wise's subsequent request.

Second, I do not find the facts before us square with the line of cases, cited by the majority, that invalidate a traffic stop and subsequent questioning unrelated to the initial stop unless the officer has additional reasonable suspicion to pursue such a line of questioning. *See* maj. op. at 84–85. In my view, additional reasonable suspicion is necessary in an evolving detention setting only if the police officer's conduct exceeds the bounds of the scope of the lawful stop.

Courts have permitted routine requests for license and registration documentation in the context of routine traffic stops. *See* cases cited in maj. op. at 84; *see also U.S. v. Pena*, 920 F.2d 1509 (10th Cir.1990), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). Although the requests are "routine," Fourth Amendment concerns are raised and the requests must be reasonable under the circumstances.

The United States Supreme Court has invalidated random stops for the purpose of checking a driver's license and registration unless there is at least an articulable and reasonable suspicion to believe that the driver was unlicensed or the automobile not registered. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Prior to *Prouse*, a number of jurisdictions had issued conflicting opinions on such stops. *Id.* at 651, 99 S.Ct. at 1394. In resolving the split, the Supreme Court rejected Delaware's argument that "the State's interest in discretionary spot checks as a means of ensuring the safety of its roadways outweighs the resulting intrusion of the privacy and security of the persons detained." *Id.* at 655, 99 S.Ct. at 1397. Instead, the Supreme Court stated that:

> The foremost method of enforcing traffic and vehicle safety regulations ... is acting upon observed violations. *Vehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained.*

*Id.* at 659, 99 S.Ct. at 1399 (emphasis added).

In *Prouse*, the Supreme Court, in part, invalidated random checks for a driver's li-

---

1. Although the record does not reflect the exact duration of the interaction between Officer Wise and Redinger, Officer Wise's testimony describes a very brief interaction.

cense and registration on the basis that such stops raised the specter of fear and/or embarrassment for the singled-out automobile occupant, unlike checkpoint stops. Here, there is no such concern because Redinger's automobile had already been lawfully stopped. To request his license and registration at such a juncture is more analogous to sobriety checkpoints, for example, than random stops. Therefore, although *Prouse* stands for the proposition that Fourth Amendment concerns are raised in a routine request for license and registration documentation, the Supreme Court's decision does not necessarily preclude such a routine request if the automobile has been lawfully stopped.[2]

I acknowledge that other jurisdictions have ruled otherwise. These decisions are relied upon and thoroughly discussed by the majority. *See* maj. op. at 84–85. In particular, the Tenth Circuit has considered this issue in *United States v. McSwain*, 29 F.3d 558 (10th Cir.1994). Although the Tenth Circuit expressly addressed and foreclosed an officer from requesting the driver's license and registration after reasonable suspicion for the stop has dissipated, the context was different from that here. In *McSwain*, the police officer proceeded with an intrusive line of questioning that exceeded a routine request for license and registration papers. *See* Chief Justice Vollack's dissenting op. at 84. Thus, *McSwain*, is not a "pure" example of a police officer following through on routine police procedure.

In *State v. Hill*, 606 A.2d 793 (Me.1992), the Supreme Court of Maine permitted a request for license and registration documentation under facts similar to the case now before us. The court explained that if the inception of the stop was valid, the subsequent actions of the police officer had to be reasonable under the circumstances:

> In this case, Hill was validly stopped for a suspected traffic violation, Officer Low then sought to ensure that Hill was neither unlicensed nor operating an unregistered

vehicle. Balancing this significant State interest against the minimal further intrusion of asking Hill for the documents, we hold that Officer Low did not unreasonably intrude in Hill's protected fourth amendment rights.

*Id.* at 795. I agree with the rationale in *Hill*—further limited intrusion for a routine request is reasonable under the circumstances of a lawful stop. Police officers have an affirmative duty to enforce traffic laws. Restricting police officers from following through on routine police procedures, pursuant to a lawful stop, unnecessarily and unjustifiably circumscribes an officer's ability to enforce traffic laws. Moreover, the result under the majority's holding is an unnaturally constrained interaction between an officer and citizen during a routine everyday occurrence.

Therefore, I agree with the majority that the Fourth Amendment is implicated in a request for license and registration documentation. I disagree with the majority's view that further detention requires additional reasonable suspicion when such further detention involves a routine request for information and nothing more. During the brief detention, pursuant to a *lawful stop*, Officer Wise merely requested to see Redinger's license and registration. There was no interrogation. The stop did not become unlawful once Officer Wise viewed the temporary plate on Redinger's automobile. Thus, I would find the request and related detention were reasonable and constitutionally permissible even though reasonable suspicion that Redinger had committed a traffic infraction had dissipated. Accordingly, I respectfully dissent.

KOURLIS, J., joins in this dissent.

---

**2.** The Supreme Court of Ohio has interpreted *Prouse* to require that at the time the police officer requests license and registration documentation, the officer must harbor "an 'articulable and reasonable suspicion' that [the driver] was violating the law at that time [the driver]

was detained and ordered to produce his driver's license." *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237, 1239 (1984) (footnote omitted), *cert. denied*, 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116 (1984). I would not interpret *Prouse* in this limited fashion.