The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Damian John ALTMAN, Defendant–Appellee.

No. 97SA45.

Supreme Court of Colorado, En Banc.

May 19, 1997.

Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, David R. Juarez, Deputy District Attorney Brighton, for Plaintiff–Appellant.

The Tegtmeier Law Firm, P.C., Bradley S. Taylor, Colorado Springs, for Defendant–Appellee.

Chief Justice VOLLACK delivered the Opinion of the Court.

In this interlocutory appeal, the People seek review of an order entered by the Adams County District Court suppressing evidence of controlled substances found in the defendant's possession. The district court determined that the troopers in this case were not concerned for their safety and thus did not need to engage in a protective search during the investigatory stop. The district court therefore concluded that the search of the defendant's vehicle was unconstitutional. Although we defer to the district court's finding that the troopers were not subjectively concerned for their safety, we nevertheless hold that the search of the defendant's vehicle was objectively reasonable in light of the circumstances of this case. We therefore reverse the district court's ruling.

## I.

On March 3, 1996, at approximately 4:30 p.m., Trooper Leonard Fleckenstein (Trooper Fleckenstein) and Trooper Scott Hinshaw (Trooper Hinshaw) were on patrol in a Colorado State Patrol vehicle in Adams County. While traveling southbound on Highway 287 near the on-ramp to Interstate 76, they noticed a 1987 white Honda Accord in front of them. The rear of the vehicle was covered with dirt which obstructed the rear license plate. Both troopers testified that they were unable to determine whether the registration tags on the license plate were current. Additionally, the troopers observed that the vehicle's windshield had two cracks, one of which obstructed the driver's vision.

Because the registration tags were illegible, and because the windshield was cracked and obstructed vision, the troopers stopped the Honda. As they approached the vehicle, they discerned that the registration tags on the license plate were current for 1996. Trooper Fleckenstein then approached the driver, Damian Altman (Altman), and requested his driver's license, vehicle registration, and proof of insurance. In the meantime, Trooper Hinshaw approached the passenger side of the vehicle and took a position where he was able to observe Altman. Trooper Hinshaw testified that he saw on the floorboard between Altman's legs a bag of blue pills and a jar with a substance in it. However, Altman testified that he had nothing on the floorboard between his legs at the time of the investigatory stop. Both Trooper Fleckenstein and Trooper Hinshaw testified that Altman was acting unusually nervous at this time.

After Trooper Fleckenstein obtained Altman's driver's license, vehicle registration, and proof of insurance, both troopers returned to their patrol vehicle. The troopers then ran a check on Altman's driver's license and vehicle registration, which indicated that there were no outstanding warrants for his arrest. Trooper Hinshaw testified that while the troopers were running the check, he saw Altman bending over in his seat and making motions toward the bottom of his seat. Trooper Fleckenstein also testified that he noticed Altman crouching over in his seat at that time.[1] Both troopers testified that Altman's actions gave them concern for their safety.

The troopers exited their patrol vehicle and reapproached Altman. Trooper Fleckenstein asked Altman to step out of the Honda, patted him down, and directed him to step to the rear of the vehicle next to Trooper Hinshaw. Trooper Fleckenstein then searched under the driver's seat of Altman's vehicle and discovered a plastic bag containing blue pills and a jar containing a leafy substance. Trooper Fleckenstein also discovered under the passenger seat a clear

Tupperware container which contained stems believed to be psilocybin mushrooms. The trooper further found in the vehicle's ash tray a smoking pipe and some partially smoked marihuana cigarettes.

After Trooper Fleckenstein discovered the suspected controlled substances, the troopers arrested Altman, advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and transported him to the police station. Altman was charged with one count of possession of a schedule I controlled substance, contrary to section 18–18–405(2)(a)(I), 8B C.R.S. (1996 Supp.), and three counts of possession of a schedule IV controlled substance, contrary to section 18–18–405(2)(c)(I), 8B C.R.S. (1996 Supp.).

Altman filed a motion to suppress all evidence obtained as a result of the search of his vehicle. On January 24, 1997, the district court held a suppression hearing and determined that the search of Altman's vehicle was unconstitutional. The district court characterized as unbelievable the troopers' testimony that they were concerned for their safety. The court thus rejected the troopers' asserted safety concerns and suppressed all evidence obtained during the search of Altman's vehicle.

## II.

■ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that law enforcement personnel may, in compliance with the Fourth Amendment, conduct brief investigatory stops based on reasonable suspicion. *Id.* at 30–31, 88 S.Ct. at 1884–85. To justify an investigatory stop, three conditions must exist: (1) the officer must have a reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur; (2) the purpose of the detention must be reasonable; and (3) the scope and character of the detention must be reasonable when considered in light of its purpose. *See People v. Sutherland*, 886 P.2d 681, 686 (Colo.1994).

---

1. Altman also testified that he bent over in his seat while the troopers were running the check

on his driver's license and vehicle registration.

## A.

We must first determine whether the troopers properly initiated an investigatory stop of Altman. Here, the troopers stopped Altman because his windshield was cracked and his vehicle's license plate was obstructed by dirt in violation of section 42–3–123(2), 17 C.R.S. (1996 Supp.) (requiring that all license plates "be maintained free from foreign materials and in a condition to be clearly legible"). As such, the troopers had a reasonable suspicion that criminal activity had occurred or was occurring. Additionally, the purpose of the traffic stop was to investigate Altman's ongoing license plate violation. Based on the troopers' reasonable suspicion and reasonable purpose, we conclude that they properly initiated the investigatory stop of Altman.

## B.

We must next determine whether, after stopping Altman and discerning that his registration tags were current, Trooper Fleckenstein acted within the scope and character of the investigatory stop by requesting Altman's identification, vehicle registration, and proof of insurance.

In *People v. Clements*, 665 P.2d 624 (Colo. 1983), an officer observed that a motorist's temporary license plate was torn and illegible. After the officer stopped the motorist and approached the license plate, the officer was able to discern that the license plate was valid. In *Clements*, we stated that although the officer could determine that the license plate was valid, the fact remained that the license plate was illegible. *Id.* at 625. We thus held that the officer properly detained the motorist and requested his driver's license and vehicle registration after discerning that his license plate was valid. *Id.*

In *People v. Redinger*, 906 P.2d 81 (Colo. 1995), an officer could not see a permanent or temporary license plate on the rear of the defendant's vehicle. After the officer stopped the defendant and approached the defendant's vehicle, he observed a valid temporary license plate properly displayed in the rear window of the vehicle. This court distinguished *Redinger* from *Clements* because

in *Clements*, the purpose of the investigatory stop had not dissipated before the officer questioned the motorist. *Redinger*, 906 P.2d at 84. In contrast, in *Redinger*, this court determined that the purpose of the investigatory stop dissipated when the officer determined that the defendant had properly displayed a valid temporary license plate on his vehicle. *Id.* at 86. This court therefore held that the officer improperly required the defendant to produce his driver's license and vehicle registration after the purpose of the investigatory stop had dissipated. *Id.*

The facts of the current case are distinguishable from those in *Redinger* because here, the purpose of the investigatory stop had not dissipated when Trooper Fleckenstein questioned Altman. Instead, the current case is similar to *Clements* because, although Trooper Fleckenstein had discerned that Altman's registration tags were current, the fact remained that Altman's license plate was illegible due to dirt obstructing it and that the windshield was cracked. As such, Trooper Fleckenstein properly required Altman to produce his driver's license, vehicle registration, and proof of insurance during the investigatory stop.

## III.

We must now determine whether Trooper Fleckenstein properly searched Altman's vehicle under the circumstances of this case.

An investigatory stop is less intrusive than an arrest and, accordingly, a police officer may conduct an investigatory stop and a limited search for weapons with less than probable cause for an arrest. *See Sutherland*, 886 P.2d at 686. If an officer believes that a person may be armed and dangerous, the officer may conduct a pat-down search of the individual for weapons. *See id.* During the course of an investigatory stop, an officer may also search those areas of a vehicle's passenger compartment in which a weapon may be placed or hidden. *See People v. Weston*, 869 P.2d 1293, 1296 (Colo.1994). However, a valid stop of a vehicle based on reasonable suspicion does not mean that the police automatically may search the passenger compartment for weapons. *See id.* In-

stead, a police officer may conduct a search of the passenger compartment only if he or she possesses a reasonable belief based on specific and articulable facts that the suspect is dangerous and may gain immediate control of weapons. *See id.*

The purpose of a limited protective search is to allow an officer to pursue an investigation without fear of violence. *See People v. Corpany,* 859 P.2d 865, 869 (Colo. 1993). Accordingly, the scope and character of the search must be reasonably related to its sole purpose in protecting police officers and others nearby. *See id.* If the protective search goes beyond what is necessary to determine whether a suspect is armed, it is no longer valid and the fruits of the search will be suppressed. *See id.*

In order to ascertain the purpose of an intrusion, a court may consider the officer's declarations and other evidence of the officer's intention at the time of the search. *See Weston,* 869 P.2d at 1298. However, an officer's subjective intent is not critical to a resolution of this issue. *See id.* What is determinative is whether the purpose of the intrusion was objectively reasonable in light of the circumstances confronting the officer at the time of the search. *See id.* A limited intrusion will be upheld on the basis of its objective reasonableness even though the officer may have harbored a subjective intent to engage in a more extensive intrusion than was warranted under the circumstances. *See id.*

In *Whren v. United States,* —— U.S. ——, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), the United States Supreme Court held that otherwise lawful conduct by law enforcement officers is not made illegal or unconstitutional merely because the officers' subjective intent is illegitimate. The Supreme Court thus rejected the proposition that pretextual ulterior motives could invalidate police conduct which is justified by probable cause. *Id.* at ——, 116 S.Ct. at 1773. Similarly, in *People v. Hill,* 929 P.2d 735, 740 (Colo.1996), we held that, once the officer had probable cause to search the defendant's vehicle based on an open alcohol container violation, any illegitimate motive for the search did not invalidate the other-

wise lawful search supported by probable cause. In *Hill,* the objective standard we utilized to determine whether the officer had probable cause to conduct the search made it unnecessary to engage in a subjective analysis of the officer's motives for the lawful search. *Id.*

In the current case, the district court determined that the troopers' motive in searching Altman's vehicle was to determine what Altman had put underneath his seat, not to conduct a protective search due to safety concerns. The district court thus found that the troopers' testimony regarding officer safety concerns was not credible. We recognize that the district court's credibility determination is entitled to deference. *See Salazar v. People,* 870 P.2d 1215, 1221 (Colo. 1994). However, the district court's credibility determination relates to the troopers' subjective intent for searching Altman's vehicle and is thus irrelevant in our present inquiry.

Instead, we must determine whether the purpose of the search was objectively reasonable in light of the circumstances confronting the troopers at the time of the search. Here, both troopers observed Altman bend over in his seat and make motions toward the bottom of his seat. We have held in prior cases that during an investigatory stop, police officers have a reasonable belief based on specific and articulable facts that occupants of an automobile are armed and dangerous when the officers observe the occupants lean over in their seat after being pulled over. *See Corpany,* 859 P.2d at 870 (holding that officer properly conducted protective search during investigatory stop because he "saw two passengers lean over and place something below the front seat" after he activated emergency lights); *People v. Cagle,* 688 P.2d 718, 723 (Colo.1984) (holding that passenger's furtive conduct in bending down in his seat after officer activated emergency lights warranted reasonable belief that passenger had weapon beneath his seat).

Although the troopers in the current case may not have been subjectively concerned for their safety when they conducted the search of Altman's vehicle, we nevertheless conclude that the search was objectively reasonable in light of the fact that Altman

leaned over and made motions toward the bottom of his seat after he was stopped by the troopers. Viewed objectively, this furtive action provided a reasonable belief based on specific and articulable facts that Altman was potentially armed and dangerous. Moreover, the scope of the search, which was limited to the area of the vehicle within Altman's reach, was reasonably related to the purpose of protecting the troopers from violence during the investigatory stop. We therefore hold that the limited search of Altman's vehicle was objectively reasonable.

### IV.

The troopers in this case properly initiated the investigatory stop of Altman after observing that his license plate was obstructed by dirt and that his windshield was cracked. Moreover, the troopers properly requested Altman's driver's license, vehicle registration, and proof of insurance because the purpose of the investigatory stop had not yet dissipated when the troopers discerned that the registration tags were current. Finally, setting aside the troopers' subjective intent, the search of Altman's vehicle was objectively reasonable as a protective search based upon Altman's furtive movement of bending over in his seat. Because the investigatory stop and protective search in this case were justified, we reverse the district court's order suppressing evidence of the controlled substances obtained during the search of Altman's vehicle.