The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Violet BRANT, Defendant–Appellee.

No. 10SA323.

Supreme Court of Colorado,
En Banc.

April 18, 2011.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Kenneth R. Buck, District Attorney, Nineteenth Judicial District, Sadie Medrano, Deputy District Attorney, Anthea L. Carrasco, Deputy District Attorney, Greeley, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Stephanie Stout, Deputy Public Defender, Greeley, Colorado, Attorneys for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the Court.

In this interlocutory appeal, the prosecution challenges the trial court's suppression of evidence obtained as a result of a traffic stop, a police officer's protective search for weapons, and the officer's subsequent "plain feel" discovery of illegal drugs and drug paraphernalia. The trial court found that the police had reasonable suspicion for the traffic stop but exceeded the permissible scope of a protective search. We disagree.

A police officer pulled over a car for a broken taillight. While walking to the car following the stop, an officer saw the defendant, Violet Brant, place something between the passenger door and the front seat. The officer removed her from the car, patted her down, and did a protective search of the front seat passenger area for a possible weapon. The officer discovered a glove between the door and seat, squeezed the glove, and felt what he recognized to be a pipe. From the glove, the officer removed a glass pipe with burn residue on it and a small baggie of suspected narcotics. We hold that a police protective search of the passenger compartment of the vehicle was justified. Applying the "plain feel" doctrine, we hold that the police properly seized evidence discovered in the glove. Accordingly, we reverse the sup-pression order and return this case to the trial court for further proceedings.

**I.**

Evidence at the suppression hearing before the trial court showed that, on the evening of January 31, 2010, Officer Cash of the City of Greeley Police Department was observing a house he had under surveillance for drug trafficking. He saw a Jeep pull up to the house, park, and depart shortly thereafter. He radioed Officer Mason, who was nearby in another patrol car. Officer Mason stopped the Jeep based on seeing a broken taillight. Returning to his police car, Officer Mason discovered by running a clearance check that the driver's license had been revoked. When Officer Cash arrived at the scene, both officers approached the Jeep on foot to arrest the driver.

Both officers observed the passenger, Brant, leaning over as if she might be hiding something. Officer Mason saw something in Brant's hands but could not determine what it was. As Officer Cash walked closer to the Jeep, he saw Brant putting something between the front door and front seat.

Concerned that the object might be a weapon, Officer Cash immediately ordered Brant out of the Jeep and performed a pat-down. He found nothing on Brant. Officer Cash then handcuffed Brant and searched the passenger area of the Jeep. He found a cloth glove between the front passenger door and the front passenger seat. Feeling the glove, he recognized the shape of a pipe. When Officer Cash examined the contents of the glove he found a glass pipe with burn residue on it and a small baggie of suspected illegal narcotics. Officer Cash then placed Brant under arrest and advised her of her *Miranda* rights.

Brant waived her rights. When asked if she had anything else on her, Brant said yes. The police then discovered a small digital scale and another baggie of suspected narcotics.

The prosecution charged Brant with one count of possession of less than one gram of a schedule II controlled substance (second

offense),[1] a class four felony, and possession of drug paraphernalia.[2] Brant pled not guilty to both counts and filed a motion to suppress all evidence gained from Officer Cash's search of the glove.

The trial court ruled that Officer Mason's stop of the vehicle was legal, based on reasonable suspicion of driving with a broken taillight, a traffic offense. The trial court also found that Officer Mason had probable cause to arrest the driver, based upon driving with a revoked license.

In regard to passenger Brant, the trial court ruled that her furtive movement within the vehicle justified only a police search of her person for a weapon. Even if the situation justified a limited search into the passenger seat area, the trial court reasoned that a valid search could not extend to the glove, because Officer Cash did not believe the glove contained a weapon. The trial court suppressed the evidence found in the glove as the fruits of an illegal search.

## II.

We hold that a police protective search of the passenger compartment of the vehicle was justified. Applying the "plain feel" doctrine, we hold that the police properly seized evidence discovered in the glove.

## A.

### Standard of Review

We review a suppression order with deference to the trial court's findings of fact and will not disturb those findings if they are supported by competent evidence in the record. *People v. Castaneda,* 249 P.3d 1119, 1122 (Colo.2011). We review de novo the trial court's application of the law to the facts under the totality of the circumstances. *Id.*

■ The Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution protect against unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7. Whether a search or seizure is reasonable depends on the extent of the intrusion; investigatory stops are generally considered an intermediate intrusion that may take place under narrowly defined circumstances. *People v. Archuleta,* 980 P.2d 509, 512 (Colo. 1999). The police may perform an investigatory car stop if reasonable suspicion exists that criminal activity has or is occurring. *People v. Pacheco,* 182 P.3d 1180, 1182 (Colo. 2008); *People v. Melgosa,* 753 P.2d 221, 225 (Colo.1988). A traffic infraction, such as driving with a broken taillight, is sufficient justification for a police vehicle stop. *People v. H.J.,* 931 P.2d 1177, 1181 (Colo.1997).

■ When the police have made a valid stop, they may require the driver to provide identification and vehicle registration information. *Id.* If the police have an articulable and objectively reasonable belief that a person in the car may be armed and dangerous, they may conduct a protective search of the person and the passenger area of the car. *People v. McDaniel,* 160 P.3d 247, 251 (Colo. 2007); *People v. Corpany,* 859 P.2d 865, 868–69 (Colo.1993). A furtive gesture made by a passenger during an investigatory stop supports a police search for weapons within the passenger compartment of the vehicle. *McDaniel,* 160 P.3d at 251 (holding a weapons search of passenger compartment valid when defendant ducked down in her vehicle as officer ran a background check in patrol car); *People v. Altman,* 938 P.2d 142, 146 (Colo.1997)(holding a weapons search valid when driver leaned over and made motions toward the bottom of his seat after he was stopped by troopers); *Melgosa,* 753 P.2d at 225 (holding a weapons search valid when a passenger placed an object under the seat after being pulled over); *Corpany,* 859 P.2d at 869 (holding a weapons search warranted after passenger leaned forward and placed something beneath the front seat as officer pulled the vehicle over).

■ During a weapons search the police may take physical control of the person. The fact that the police are in physical control of the person does not necessarily negate the threat to officer safety, because the person may regain access to the interior of the

---

**1.** § 18–18–405(1), (2.3)(a)(II), C.R.S. (2009).

**2.** § 18–18–428(1), C.R.S. (2010).

vehicle and ultimately a weapon if he or she is not arrested as a result of the investigatory stop. *People v. Smith*, 13 P.3d 300, 308–09 (Colo.2000); *Melgosa*, 753 P.2d at 225. "Such a limited intrusion is viewed as a reasonably effective method of neutralizing the risk of physical harm confronting the officer." *Melgosa*, 753 P.2d at 225–26.

■ A protective search for weapons may be justified based on its objective reasonableness, even if the police may be harboring a subjective intent to investigate for evidence such as illegal drugs. *Altman*, 938 P.2d at 146. What is determinative is whether the purpose of the protective search was objectively reasonable in light of the circumstances the officer confronted at the time of the search. *Id.*

■ The scope of the protective search of the passenger area of the vehicle is limited to areas in which a weapon may be placed or hidden. *Smith*, 13 P.3d at 308; *People v. Weston*, 869 P.2d 1293, 1296 (Colo.1994). However, the officer conducting the protective search is permitted to make a cursory examination of any object discovered during the search for the purpose of determining whether the object is a weapon. *Weston*, 869 P.2d at 1296. Because the purpose of the protective search is to allow an officer to pursue an investigation without fear of violence, a protective search that goes beyond what is necessary to determine whether a suspect is armed is invalid and the fruits of that search will be suppressed. *Altman*, 938 P.2d at 146.

■ The plain view doctrine is a well-established exception to the warrant requirement. When the police are conducting a valid search, they may seize evidence in plain view so long as the facts available to that officer warrant a reasonable belief that the evidence viewed is contraband. *People v. Alameno*, 193 P.3d 830, 834 (Colo.2008); *People v. Kluhsman*, 980 P.2d 529, 534 (Colo. 1999). If the incriminating nature of the object is not immediately apparent, the plain view doctrine does not justify its seizure. *People v. Gothard*, 185 P.3d 180, 184 (Colo. 2008). "The rationale of the plain-view doctrine recognizes that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

■ Like the plain view doctrine, the plain feel doctrine allows the police to seize contraband discovered through the sense of touch during an otherwise lawful search. *Id.; People v. Rushdoony*, 97 P.3d 338, 345 (Colo.App.2004). If during the course of a valid protective search for weapons a police officer feels an object that gives immediate rise to a reasonable belief that the item is contraband, the officer may seize the object without a warrant. *Dickerson*, 508 U.S. at 375, 113 S.Ct. 2130; *Rushdoony*, 97 P.3d at 345 (upholding the admission of a pipe discovered while performing a pat-down of suspect's outer clothing).

■ As with the plain view doctrine, if a police officer lawfully pats down a suspect's outer clothing or conducts a protective search during an investigatory stop of a vehicle and feels an object, the identity of which is immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. *Dickerson*, 508 U.S. at 375, 113 S.Ct. 2130.

## B.

### Application to this Case

■ In this case there is no question that the investigatory stop of the Jeep was constitutionally justified. Officer Mason pulled over the Jeep in which Brant was a passenger because it had a broken taillight, in violation of section 42–4–206, C.R.S. (2010). The trial court found that the police had reasonable suspicion that criminal activity was occurring sufficient to justify the vehicle stop. We agree. Driving with a broken taillight justifies an investigatory vehicle stop. Upon making the stop, the police properly asked for the driver's license and vehicle registration information. *H.J.*, 931 P.2d at 1181.

Upon discovering that the driver's license was under revocation, the two officers on the scene approached the Jeep on foot to arrest the driver. Both officers observed Brant, the passenger, acting furtively. As Officer Cash approached the passenger door, he saw Brant leaning forward and hiding something between the passenger door and her seat. These actions caused concern for officer safety. The police properly ordered Brant out of the car and patted her down.

The trial court ruled that Brant's actions justified a pat-down of her person in an attempt to ensure the officers' safety. We agree. A furtive gesture in response to police contact during an investigatory stop may give rise to an objectively reasonable belief that the suspect is armed and dangerous, justifying a protective search. *McDaniel,* 160 P.3d at 251; *Melgosa,* 753 P.2d at 227.

However, the trial court ruled that a protective search for weapons was limited to determining whether Brant had anything on her person that might threaten the officers' safety and could not extend to a search of the passenger area of the car. Even assuming the situation justified a limited search into the passenger area, the trial court ruled that such a search could not include the glove. We disagree.

The police during a valid investigatory traffic stop may order the driver or passengers out of the car and conduct a protective search of the passenger compartment of the vehicle for weapons, so long as the officer possesses an objectively reasonable belief that the occupants pose a danger to an officer. *McDaniel,* 160 P.3d at 251; *Smith,* 13 P.3d at 305; *Altman,* 938 P.2d at 146; *Melgosa,* 753 P.2d at 227; *see also Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)(upholding a protective search of the passenger compartment of a car based upon reasonable suspicion that the suspect is armed and dangerous).

Having established that Officer Cash had an objectively reasonable suspicion that Brant might be armed and dangerous, we conclude that Officer Cash properly extended the protective search to the passenger compartment of the Jeep. The fact that Officer Cash patted down and handcuffed Brant out-side the vehicle did not negate the need for a search of the passenger area. The police had restrained her in order to make the protective search. Absent an arrest, she could have regained access to the interior of the vehicle and any weapons stored therein. *Melgosa,* 753 P.2d at 226.

While searching the passenger area of the vehicle for weapons, Officer Cash saw the glove and picked it up to investigate whether it contained a weapon. While a protective search of the vehicle must be limited to areas in which weapons may be stored and retrieved by the persons stopped, it is objectionably reasonable to believe a glove could contain a dangerous weapon, such as a knife or a small gun. *Corpany,* 859 P.2d at 871 (holding a protective pat-down of a fanny pack found within the passenger compartment was justified). Officer Cash's testimony demonstrated that he did not know what the glove contained and wanted to verify whether or not there was a weapon within, a permissible police inquiry. *See, e.g., Weston,* 869 P.2d at 1296 (allowing an officer conducting a protective search to make a cursory examination of discovered objects in order to determine whether the objects are dangerous).

Upon feeling the glove, Officer Cash immediately recognized the object stored therein as a pipe. If an officer has probable cause to believe that an object discovered during the course of a protective search is incriminating, he or she may seize the object under the "plain view," or in this case, the "plain feel" doctrine. *Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130. While the trial court correctly found the scope of the protective search to be limited to weapons, once a officer discovers contraband during a legitimate protective search, he "cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Long,* 463 U.S. at 1050, 103 S.Ct. 3469. The police search of the glove was not unconstitutional. Officer Cash properly seized the evidence and arrested Brant. The trial court erred in suppressing the evidence in this case.

## III.

Accordingly, we reverse the trial court's suppression order and remand this case for further proceedings consistent with this opinion.