Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 5, 2016

**2016 CO 76**

**No. 16SA163, <u>People v. Delacruz</u>—Fourth Amendment—Traffic Stops—Protective Search of a Vehicle.**

In this interlocutory appeal, the supreme court reviews a trial court's order suppressing a firearm that police seized from the vehicle in which the defendant was a passenger.  The supreme court concludes that the firearm was discovered during a valid protective search of the vehicle under <u>Michigan v. Long</u>, 463 U.S. 1032 (1983), given the circumstances confronting the officer at the time of the search.  The officer had an articulable and objectively reasonable basis to conduct a protective search of the passenger compartment of the vehicle, where the investigatory stop occurred in an area the officer testified was known for frequent criminal activity; the defendant appeared to have given the officer a false name; and the officer observed a large knife on the front floorboard near the defendant's feet when the officer asked the defendant to step out of the vehicle to question him.  The supreme court further concludes that the officer did not exceed the lawful scope of a protective search by looking behind the driver's seat because the rear floorboard is an area of sufficient size to conceal a weapon and would have been within the reaching distance of a vehicle occupant.  Accordingly, the supreme court reverses the trial court's suppression order.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 76

### Supreme Court Case No. 16SA163
*Interlocutory Appeal from the District Court*
Denver County District Court Case No. 15CR1907
Honorable Kandace C. Gerdes, Judge

### Plaintiff–Appellant:

The People of the State of Colorado,

v.

### Defendant–Appellee:

Randiray D. Delacruz.

### Order Reversed
*en banc*
December 5, 2016

**Attorneys for Plaintiff–Appellant:**
Mitchell R. Morrissey, District Attorney, Second Judicial District
Katherine A. Hansen, Deputy District Attorney
  *Denver, Colorado*

**Attorneys for Defendant–Appellee:**
McDermott Stuart, & Ward, LLP
Martin A. Stuart
  *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1   The People filed this interlocutory appeal under section 16-12-102(2), C.R.S. (2016), and C.A.R. 4.1,[1] seeking our review of a district court's order suppressing a firearm that Denver Police seized from a car in which Randiray D. Delacruz was a passenger.  We conclude that the firearm was discovered during a valid protective search of the vehicle in light of the circumstances confronting the officer at the time of the search.  See Michigan v. Long, 463 U.S. 1032 (1983).  We therefore reverse the district court's order and remand for further proceedings.

## I.  Facts and Procedural History

¶2   Defendant Randiray D. Delacruz was charged in Denver District Court with three counts of menacing and one count of possession of a weapon by a previous offender for placing three individuals in fear of imminent serious bodily injury by use of a firearm.  Delacruz moved to suppress a TEC-9 handgun discovered during a search of the vehicle in which he was a passenger.

¶3   Evidence presented at the suppression hearings[2] showed that on April 7, 2015, Denver Police Officer Scott Armstrong was on patrol in northeast Denver when he entered a Quality Inn parking lot known to law enforcement for frequent drug activity. To search for stolen vehicles and other vehicles of interest, Officer Armstrong was

---

[1] The People certified that this appeal was not taken for purposes of delay and that the evidence suppressed constituted a substantial part of the proof of the charges pending against Delacruz.  See C.A.R. 4.1(a).

[2] The federal government also filed charges against Delacruz stemming from the vehicle search at issue in this case.  The district court based its suppression order on a record that included a transcript of the suppression hearing in the federal case.  Transcript of Suppression Hearing, United States v. Delacruz, No. 15-CR-00196-REB-1 (D. Colo. Jan. 13, 2016).

running checks on the license plates of parked vehicles. As he was preparing to leave the parking lot, Officer Armstrong observed a black SUV turn left into the parking lot without using a turn signal. Officer Armstrong observed that the SUV had a male driver, who was later identified as Delacruz, and a female passenger, who was later identified as Rachel Yerebeck. After the SUV turned into the parking lot, Officer Armstrong lost sight of the vehicle. Officer Armstrong ran a check of the vehicle's license plate number and learned that the SUV belonged to Yerebeck.

¶4 To try to locate the SUV, Officer Armstrong stopped his car nearby to see if the SUV would pass again. Within approximately five to ten minutes, Officer Armstrong observed the SUV return. This time, Delacruz was in the passenger seat, and Yerebeck was driving.

¶5 Officer Armstrong pulled behind the vehicle and conducted a traffic stop for the turn signal violation that occurred when Delacruz had been driving. Officer Armstrong approached the driver's side of the SUV and explained the reason for the stop to Yerebeck. Yerebeck handed her driver's license to Officer Armstrong. Officer Armstrong asked Delacruz for identification as well. Delacruz responded that his name was "Rae Lacruz," but stated that he did not have an identification card.

¶6 Officer Armstrong returned to his patrol car to search for the names "Rachel Yerebeck" and "Rae Lacruz" in the National Crime Information Center ("NCIC") database. The NCIC database indicated that Yerebeck had no outstanding warrants. The database returned no record of an individual named "Rae Lacruz." At that point,

3

Officer Armstrong became suspicious that Delacruz had provided a false name, and Officer Armstrong called a backup officer to the scene.

¶7 Officer Armstrong then approached the vehicle again, this time from the passenger's side. Officer Armstrong asked Delacruz to step out of the vehicle, intending to ask about his identity outside of Yerebeck's presence. Delacruz agreed to get out of the vehicle, and as he did so, Officer Armstrong heard a metallic "thump." Officer Armstrong looked towards the front passenger's-side floorboard and saw a large, fixed-blade knife. Neither Yerebeck nor Delacruz had told Officer Armstrong that there was a weapon in the car. Officer Armstrong handcuffed Delacruz and passed him to a backup officer who had recently arrived.

¶8 Officer Armstrong asked Yerebeck to step out of the vehicle so that he could secure the knife. Yerebeck exited the SUV and was accompanied by a third officer, while Officer Armstrong went back to the SUV. After securing the knife, Officer Armstrong leaned into the vehicle to look for additional weapons, as the vehicle's windows were tinted too darkly to look through from the outside. He put his knee on the front passenger's seat, braced his hand on the front driver's seat, and looked onto the back floorboard, which was cluttered with boxes and bags. Among the items on the rear floorboard behind the driver's seat was a pillowcase, in which Officer Armstrong observed what appeared to be the butt of a gun. Officer Armstrong then opened the rear driver's-side door of the SUV to verify that what he had seen was actually the butt of a gun.

¶9 At that point, one of the backup officers notified Officer Armstrong that they had identified Delacruz and that Delacruz had two outstanding arrest warrants, one of which was for a charge of felony menacing involving a TEC-9-type handgun. Delacruz was then arrested, and Officer Armstrong moved the car to a more secure location, obtained a search warrant, and pursuant to the warrant, seized a TEC-9-type handgun from the rear floorboard.

¶10 The district court granted Delacruz's motion to suppress. The court initially reasoned that Officer Armstrong's search of the rear passenger compartment was not a lawful search incident to arrest under Arizona v. Gant, 556 U.S. 332 (2009), because the reasons for which Delacruz was stopped and removed from the car—a traffic violation and suspicion of providing a false name—did not provide a basis for searching the passenger compartment for related evidence. The court further reasoned that Officer Armstrong's reentry of the car was not justified as a lawful protective search under Michigan v. Long, 463 U.S. 1032 (1983), because Delacruz had been removed from the car and handcuffed for officer safety, and Yerebeck was asked to step away from the vehicle and was standing with another officer.

¶11 The People seek interlocutory review pursuant to section 16-12-102(2) and C.A.R. 4.1.

## II. Standard of Review

¶12 In reviewing a suppression order, we defer to the trial court's findings of historical fact so long as they are supported by competent evidence in the record.

5

People v. Castaneda, 249 P.3d 1119, 1122 (Colo. 2011).  We review the trial court's application of the law to the facts de novo.  Id.

## III.  Analysis

## A.  Relevant Law

¶13   The Fourth Amendment to the United States Constitution and a parallel provision of the Colorado Constitution protect against unreasonable searches and seizures.  U.S. Const. amend. IV; Colo. Const. art. II, § 7.  In general, warrantless searches and seizures are unreasonable, unless an exception to the warrant requirement applies.  People v. Rodriguez, 945 P.2d 1351, 1359 (Colo. 1997).  Under one such exception, a police officer may be entitled to conduct a brief investigatory stop of a motorist if the officer has reasonable suspicion that the motorist has committed a traffic violation.  People v. McDaniel, 160 P.3d 247, 250 (Colo. 2007).

¶14   During an investigatory roadside stop, if a police officer has an articulable and objectively reasonable belief that a vehicle occupant may be armed and dangerous, the officer may conduct a protective Terry-type search of the vehicle's passenger compartment and occupants for weapons.  People v. Brant, 252 P.3d 459, 462 (Colo. 2011); Long, 463 U.S. at 1049–50 (applying principles articulated in Terry v. Ohio, 392 U.S. 1 (1968), to uphold protective search of passenger compartment of motor vehicle during lawful investigatory stop of the vehicle's occupant).  The scope and character of such a search must be reasonably related to the purpose of ensuring officer safety.  People v. Weston, 869 P.2d 1293, 1299 (Colo. 1994) (citing Long, 463 U.S. at 1039).  Accordingly, the scope of a warrantless protective search of a vehicle's passenger

6

compartment is limited to those areas in which a weapon may be placed or concealed. Brant, 252 P.3d at 463. For the protective search to be effective, officers conducting the search are permitted to make a cursory examination of objects discovered to determine if they are weapons or if weapons have been secreted inside the objects. People v. Melgosa, 753 P.2d 221, 228 (Colo. 1988).

¶15 During a protective search, police may physically restrain the vehicle's occupants, including through the use of handcuffs. Brant, 252 P.3d at 462. The fact that an officer has physical control of the suspect does not necessarily negate the threat to officer safety; a suspect can still break away from police control and retrieve the weapon, or, if the suspect is not ultimately arrested, he may access weapons if permitted to return to his car. Weston, 869 P.2d at 1296; Melgosa, 753 P.2d at 226; Long, 463 U.S. at 1051–52.

¶16 The purpose of such a limited Terry-type protective search is not to discover evidence of crime, but to allow an officer to pursue an investigation without fear of violence. People v. Altman, 938 P.2d 142, 146 (Colo. 1997); People v. Corpany, 859 P.2d 865, 869 (Colo. 1993) (citing Minnesota v. Dickerson, 508 U.S. 366, 373 (1993)). This type of limited intrusion is justified by the particular hazards confronting law enforcement during roadside encounters with drivers and passengers of automobiles. Weston, 869 P.2d at 1296. Indeed, the U.S. Supreme Court has emphasized that a roadside Terry investigation is a "close-range" investigation that takes place when the officer is particularly vulnerable, in part because a full custodial arrest has not been effected and

the officer must make a quick decision as to how to protect himself and others from possible danger. Long, 463 U.S. at 1052.

## B. Application

¶17 The district court concluded that there was a valid basis for the initial traffic stop because Officer Armstrong observed Delacruz commit a traffic infraction when he turned into the parking lot without using a turn signal. Thus, whether the firearm was discovered during a lawful protective search of the vehicle as part of the investigative roadside stop depends on whether Officer Armstrong possessed an articulable and objectively reasonable belief that the vehicle may have contained a weapon and whether the scope and character of the search were reasonably related to the purpose of ensuring officer safety. See Weston, 869 P.2d at 1296–97. We examine each requirement in turn.

### 1.

¶18 A warrantless protective search of a vehicle must serve the purpose of ensuring officer safety, which requires that the officer possess an articulable and objectively reasonable belief that a vehicle occupant may be armed. Id. at 1297. The district court concluded that Officer Armstrong's search was unreasonable in part because the purpose of the search was unrelated to the nature of the offense for which Delacruz was stopped and removed from the vehicle. That is, given that Delacruz was stopped for a traffic violation and was under investigation for providing a false name, the district court concluded that a protective search for weapons was inappropriate because it

8

would not be probative of either the traffic violation or Delacruz's misrepresentation of his identity.

¶19    The district court's analysis erroneously conflated the requirements for a search of a vehicle incident to arrest under <u>Arizona v. Gant</u>, 556 U.S. 332 (2009), with the requirements for a protective search of a vehicle during an investigative roadside stop under <u>Michigan v. Long</u>, 463 U.S. 1032 (1983).  A search of a vehicle incident to arrest is valid if the officer has a reasonable belief that evidence of the crime of arrest might be found during the search.  <u>People v. Chamberlain</u>, 229 P.3d 1054, 1057 (Colo. 2010) (citing <u>Gant</u>, 556 U.S. at 343).  Thus, for a vehicle search incident to arrest, the nature of the offense of arrest can determine the validity of the search.  For example, a vehicle search incident to arrest rarely will be appropriate where a motorist is stopped for a traffic violation because it is unlikely that a vehicle would contain evidence of the traffic violation.  <u>See</u> <u>Gant</u>, 556 U.S. at 343.

¶20    The U.S. Supreme Court's search-incident-to-arrest analysis in <u>Gant</u>, however, did not alter the holding or rationale in <u>Long</u> justifying protective searches of vehicles during roadside investigatory stops.  In his concurring opinion in <u>Gant</u>, Justice Scalia emphasized that <u>Gant</u> concerned only searches of a vehicle when the driver or an occupant is arrested, and that the rule of <u>Michigan v. Long</u> was not at issue in that case. <u>Gant</u>, 556 U.S. at 352 (Scalia, J., concurring).  Justice Scalia distinguished cases in which no arrest has occurred, noting that under such circumstances, "the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed."  <u>Id.</u>

9

¶21     The purpose of a protective search is to neutralize threats to officer safety. Because such threats may be present regardless of the cause of the investigatory stop, the nature of the offense leading to the investigatory stop is not determinative. See Brant, 252 P.3d at 462. Rather, the validity of a protective search turns on whether the search was "objectively reasonable in light of the circumstances the officer confronted at the time of the search." Id. at 463.

¶22     We disagree with the district court's conclusion that the purpose of the protective search in this case was unreasonable. Considering the circumstances Officer Armstrong confronted during the traffic stop, we conclude that it was objectively reasonable to check the passenger compartment of the SUV for additional weapons. As his testimony before the district court at the suppression hearing made clear, at the time Officer Armstrong leaned into the car to conduct the protective search, he had not yet placed Delacruz under arrest. However, Delacruz appeared to have been deceitful as to his identity because the NCIC database returned no results for the name "Rae Lacruz." Further, the investigatory stop occurred in an area that Officer Armstrong testified was known to law enforcement for frequent criminal activity. And importantly, Officer Armstrong had already observed one weapon—a large, fixed-blade knife—on the floorboard within the immediate reaching distance of one of the vehicle's occupants. Neither Yerebeck nor Delacruz had alerted Officer Armstrong to the presence of this weapon when he questioned them, first from the driver's side and later from the passenger's side of the vehicle.

¶23 Under these circumstances, Officer Armstrong had an articulable and objectively reasonable basis to believe that the occupants might be armed and dangerous. Indeed, the known presence of a weapon in a vehicle can justify a protective search for additional weapons, as was the case in Michigan v. Long itself. There, the U.S. Supreme Court concluded that officers who had observed a large hunting knife on the floorboard of the driver's side of the car "did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile." Long, 463 U.S. at 1036, 1051 (emphasis added); see also United States v. Christian, 187 F.3d 663, 669 (D.C. Cir. 1999) ("[T]he presence of one weapon [in a vehicle] may justifiably arouse concern that there may be more in the vicinity . . . ."). In light of these circumstances, we conclude Officer Armstrong had an objectively reasonable basis to justify a protective search of the passenger compartment for additional weapons.

¶24 The fact that both occupants had been removed from the car and that Delacruz had been handcuffed does not render the protective search here unreasonable. As discussed above, the fact that an officer has physical control of the suspect does not necessarily negate the threat to officer safety; a suspect can still break away from police control and retrieve the weapon, or, if the suspect is not ultimately arrested, he may access weapons if permitted to return to his car. Weston, 869 P.2d at 1296; Melgosa, 753 P.2d at 226; Long, 463 U.S. at 1051–52. Because of these possibilities, we conclude that a protective search of the vehicle was objectively reasonable, notwithstanding the facts

11

that both occupants had been removed from the vehicle and that Delacruz had been handcuffed for officer safety.

**2.**

¶25 The scope and character of a protective search must be reasonably related to the purpose of ensuring police officers' safety. <u>Weston</u>, 869 P.2d at 1299. The trial court found that the scope of the search was excessive in this case because the knife was found at Delacruz's feet, whereas the gun was found among clutter on the rear floorboard after Delacruz had been removed from the car, indicating that the scope of the protective search "went beyond what was necessary to determine that the suspect was armed."

¶26 We disagree. In the context of a traffic stop, even an unarmed individual may pose a threat to officer safety if the vehicle contains a weapon and the individual is permitted to return to the vehicle after the investigatory stop ends. <u>Long</u>, 463 U.S. at 1051–52. Because of this possibility, the scope of a protective search may extend to those portions of the passenger compartment in which a weapon may be hidden. <u>Brant</u>, 252 P.3d at 463–64 (concluding that a search of the space between the front passenger's seat and door was reasonable in scope); <u>Weston</u>, 869 P.2d at 1299–1300 (concluding that a search of the map pocket in the driver's-side door was reasonable in scope). The rear floorboard of Yerebeck's SUV falls within the lawful scope of a protective search because it is an area of sufficient size to hold or conceal a weapon and would have been within the immediate reaching distance of a vehicle occupant.

¶27 That Officer Armstrong leaned over the seat to first observe the gun, and that he thereafter opened the rear driver's-side door to verify that what he had seen was the butt of a gun, does not make the search excessive in scope. "[A] contemporaneous, cursory examination for a weapon in the area of the driver's seat is reasonably related in scope and character to ensuring the officers' safety during the period of detention." Weston, 869 P.2d at 1299 (quoting People v. Lewis, 659 P.2d 676, 682 (Colo. 1983)). Because the gun was partly concealed within a pillowcase, Officer Armstrong was entitled to open the rear door and make a cursory examination of the contents of the pillowcase in order to determine whether the pillowcase in fact contained a weapon. See Melgosa, 753 P.2d at 228. Accordingly, we conclude that the scope and character of the search were reasonably related to ensuring officer safety.

## IV. Conclusion

¶28 We conclude that, in light of the circumstances of the traffic stop in this case, the firearm was discovered during a valid protective search under Michigan v. Long, 463 U.S. 1032 (1983). The suppression order is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.