23CA0111 Peo v Ramsey 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0111
Arapahoe County District Court No. 21CR2035
Honorable Ben L. Leutwyler III, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Adrien Jabrie Ramsey,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Tow and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Philip J. Weiser, Attorney General, Jessica E. Ross, Assistant Solicitor General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John P. Finnegan, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Adrien Jabrie Ramsey, appeals the judgment of conviction entered on jury verdicts finding him guilty of three counts of possession of a controlled substance with intent to sell or distribute (fentanyl, cocaine, and psilocin[1]) and driving under restraint. He raises multiple trial errors and asserts that reversal of his psilocin conviction is required by the Natural Medicine Health Act of 2022 as enacted by the voters in the November 2022 election. *See* Proposition 122, 2023 Colo. Sess. Laws 3591-3607 (Prop 122). We reject Ramsey's claims predicated on trial error, but we agree that Prop 122 applies. Accordingly, we affirm Ramsey's convictions for possession with intent to sell or distribute fentanyl and cocaine and for driving under restraint, but we reverse his conviction for possession with intent to sell or distribute psilocin.

## I. Background

¶ 2 Ramsey was driving with a passenger, Robert Banks, when police pulled him over for weaving and having an expired license plate. After Ramsey was arrested for having an active warrant, an officer asked Banks to exit the car so he could perform a protective

---

[1] Psilocin is the active ingredient in psylocibin, or psychedelic mushrooms.

search.  The officer found a gun under Banks's seat;[2] cocaine, fentanyl, and psilocin in the center console; and a scale and inositol powder — a cutting agent — in the glove box.

¶ 3     The prosecution charged Ramsey with driving under restraint; possession with intent to sell or distribute fentanyl, cocaine, and psilocin; and a traffic infraction.  After the prosecution dismissed the traffic infraction on the morning of trial, a jury found him guilty on all remaining counts.  The trial court sentenced him to an aggregate term of ten years in the custody of the Department of Corrections.

¶ 4     Ramsey appeals, asserting that the trial court erred by (1) denying his *Batson* challenge to one of the prosecutor's peremptory strikes; (2) denying his motion to suppress evidence; (3) denying his request to admit evidence under the rule of completeness; and (4) admitting improper expert testimony.  He also asks us to vacate his conviction related to psilocin based on legislation enacted after his trial.

---

[2] Banks admitted to owning the gun.

## II.  *Batson* Challenge

### A.  Applicable Law

¶ 5    The Equal Protection Clause of the Fourteenth Amendment precludes use of a peremptory challenge to strike a juror based on race.  *Batson v. Kentucky*, 476 U.S. 79, 86 (1986).  *Batson* provides a three-step process for evaluating whether a juror was improperly struck on the basis of race.  *People v. Johnson*, 2024 CO 35, ¶ 17 (*Johnson II*) (reversing *People v. Johnson*, 2022 COA 118 (*Johnson I*)).

¶ 6    Ramsey challenges only the trial court's step two finding.  At *Batson*'s step two, the proponent of the strike must offer a race-neutral explanation for the strike — an explanation based on something other than the juror's race.  *Id.* at ¶ 19.

¶ 7    We review a trial court's step two determination de novo.  *People v. Ojeda*, 2022 CO 7, ¶ 30.

### B.  Additional Facts

¶ 8    During voir dire, the prosecutor asked the prospective jurors, "Is there anyone here who doesn't like police officers?"  Juror K, a Black woman, said,

3

> I do respect them and what they do. But yes,
> I'm highly suspicious of some of the officers
> based on certain times, with George Floyd.
> And I've also been in certain instances that
> were questionable just by, you know, the color
> of my skin . . . . And I've also had certain
> family that have gone through certain things.
> And so it may be a little harder, you know,
> with that.

Juror K agreed with the prosecutor that not all law enforcement officers are dishonest people, but she continued, "I also agree that not all of them are fully honest, and over the course of history they've been put in place . . . to keep certain people in their place, or to put more of us in jail, more than needs to be. So, no, . . . I'm not fully trustworthy of them."

¶ 9    The prosecutor used a peremptory strike to excuse Juror K. Defense counsel raised a *Batson* challenge, arguing that Juror K appeared to be of African American descent and her distrust for police was based on her cultural experiences.

¶ 10    The prosecutor explained, as its step two race-neutral reason, that he struck Juror K because she expressed that it would be difficult for her to evaluate police witnesses' testimony fairly, "and she would not give the police officers the same credence that she

would a regular lay witness testifying." The trial court found this was a race-neutral reason and denied the *Batson* challenge.

¶ 11    Defense counsel initially declined the trial court's invitation to offer further argument, but he later argued that the peremptory strike was race-based under *Johnson I*. The trial court maintained its ruling.

### C.    Discussion

¶ 12    Relying heavily on *Johnson I*, Ramsey argues the trial court erred at step two by concluding that the prosecutor's reason for excusing Juror K was race-neutral. He argues the prosecutor's stated reason for the strike — Juror K's distrust of police — was race-based because it explicitly stemmed from her racial identity. But the supreme court has since issued *Johnson II*, reversing *Johnson I* and expressly rejecting Ramsey's argument.

¶ 13    In *Johnson II*, the supreme court clarified that the facial neutrality of a prosecutor's step two reason must be evaluated based on "the striking party's stated reasons for the strike" and not "the source of the juror's potential bias." *Johnson II*, ¶ 42 ("Although a juror's bias may derive from her experiences as a person of color . . . that doesn't convert the striking party's reason

5

for excusing her into a [race-based] reason.").  In his reply brief, Ramsey acknowledges the holding in *Johnson II* but argues that Juror K was more explicit about the impact her race had on her view of police than the prospective juror in that case.  That may be, but the step two inquiry focuses on the prosecution's stated reason, not the basis for the juror's bias, even when that bias is "closely linked to (*or because of*)" the juror's race.  *Id.* (emphasis added); *see also People v. Austin*, 2024 CO 36, ¶¶ 17-18 (a division of this court misconstrued *Batson* when it concluded that a strike based on a juror's racially charged experiences with police was race-based).

¶ 14    As in *Johnson II* and *Austin*, the prosecutor's stated reason for striking Juror K was not based on race, or "an assumption that, as a person of color, [Juror K] would inherently be biased against law enforcement."  *Austin*, ¶ 19.  "Rather, the prosecutor struck [Juror K] based on the life experiences she had shared and the prosecutor's concern that those experiences might affect her ability to receive evidence from police officers impartially."  *Id.*; *see also Johnson II*, ¶ 44 ("[A] challenge based solely on the prospective juror's race is different from a challenge 'which may find its roots in part [in] the juror's attitude . . . which may be race related.'")

6

(alterations in original) (citation omitted). Accordingly, the trial court did not err in its step two determination under *Batson*.

### III. Suppression of Drug Evidence

### A. Applicable Law

¶ 15 The United States and Colorado Constitutions protect against unreasonable searches and seizures. U.S. Const. amend IV; Colo. Const. art. II, § 7. A warrantless search or seizure is presumptively unreasonable and unconstitutional absent an exception. *People v. Diaz*, 53 P.3d 1171, 1175 (Colo. 2002).

¶ 16 The automobile protective search doctrine is one such exception. *Michigan v. Long*, 463 U.S. 1032, 1034-35 (1983). Under the doctrine, if after making a valid traffic stop, "the police have an articulable and objectively reasonable belief that a person in the car may be armed and dangerous, they may conduct a protective search of the person and the passenger area of the car." *People v. Brant*, 252 P.3d 459, 462 (Colo. 2011). The test for determining the reasonableness of a protective search is objective, rather than subjective. *People v. Altman*, 938 P.2d 142, 146 (Colo. 1997).

¶ 17    A ruling on a motion to suppress is a mixed question of law and fact. *People v. Pitts*, 13 P.3d 1218, 1221-22 (Colo. 2000). We defer to a trial court's factual findings if competent evidence in the record supports them. *Brant*, 252 P.3d at 462. We review the court's application of the law to those facts de novo. *Id.*

### B.    Discussion

¶ 18    Ramsey argues the trial court erred by denying his motion to suppress evidence obtained as a result of the protective search of his car. He argues that although the officer who conducted the search testified that Banks (Ramsey's passenger) was nervous and fidgety, that did not give rise to a reasonable fear for officer safety.

¶ 19    At a pretrial hearing on the motion, the officer who conducted the search testified that he did so after observing that Banks was "very nervous, . . . his lip was quivering, and he was fidgeting a lot. He was visibly sweating." But he also testified that Banks "was unable to sit still for any period of time. He was moving around frequently and reaching places, . . . like between his legs . . . between the passenger seat and the center console, and between the passenger seat and the . . . passenger's door."

¶ 20 Viewed objectively, we conclude that Banks's act of reaching his hands between his legs and on either side of the passenger seat gave rise to an objectively reasonable belief that he may be armed and dangerous. *See Brant*, 252 P.3d at 462; *see also Altman*, 938 P.2d at 147 (suspect's "furtive action" of leaning over and making motions toward the bottom of his seat provided reasonable basis for protective search). While Ramsey argues that Banks's gestures were not furtive because they were made in plain view of the officer, the officer testified that he could "only see [Banks's] lap." And even though Banks may not have been obviously attempting to hide something, as was the case in *Brant*, his act of reaching between his legs and between the seats — places the officer could not see — gave rise to a reasonable belief that he may be attempting to access a weapon. *See Brant*, 252 P.3d at 464 (protective search was justified because place where suspect reached "could contain a dangerous weapon"). We therefore conclude the trial court properly denied Ramsey's motion to suppress.[3]

---

[3] Because the search was constitutional under the protective search exception, we need not address whether the evidence in this case was also admissible under the doctrine of inevitable discovery.

## IV.  Rule of Completeness

### A.  Applicable Law

¶ 21    The rule of completeness provides that, "[w]hen a statement or part thereof is introduced by a party, an adverse party may require introduction of any other part or any other statement which ought in fairness to be considered contemporaneously with it."  CRE 106. Its purpose is to "avoid creating a misleading impression by taking evidence out of context or otherwise creating a distorted picture by the selective introduction of evidence."  *People v. Medina*, 72 P.3d 405, 410 (Colo. App. 2003); *see also People v. McLaughlin*, 2023 CO 38, ¶ 31 (the touchstone of a completeness inquiry is fairness).

¶ 22    We review a trial court's evidentiary rulings for an abuse of discretion.  *McLaughlin*, ¶ 22.  A trial court abuses its discretion when it misapplies the law or when its decision is manifestly arbitrary, unreasonable, or unfair.  *Id.*

### B.  Discussion

¶ 23    In a statement recorded on the arresting officers' body cameras, Ramsey told police that he was trying to sell his car and was showing Banks that it runs.  Before trial, the prosecution informed the court that it did not plan to introduce Ramsey's

10

additional statement that he had "just purchased [the car] yesterday," and the statement was redacted from the body camera recording. Defense counsel did not object.

¶ 24    At trial, one of the arresting officers testified that Ramsey said he was "showing [Banks that the car] runs." He continued to explain that it was his understanding that Ramsey "was considering selling this vehicle to his passenger." In response, Ramsey sought to compel the prosecution to introduce other statements he made to the officer, specifically: "I'm showing Mr. Banks this car that I just bought yesterday; it's not running the way I would like, and I was seeing if Mr. Banks would be interested in purchasing it." The trial court denied the request.

¶ 25    Ramsey argues the trial court abused its discretion because his additional statement was necessary to clarify the officer's testimony. He argues that the admission of his redacted statement, without additional context, was unfair because it allowed the prosecution to argue that he had possession of the car, without the clarification that he had only owned the car for a day. We are not persuaded.

11

¶ 26    To be sure, Ramsey's indication that he only owned the car for one day supported his defense that the drugs did not belong to him. The trial court recognized as much before denying his request to compel admission of the additional statement.  But the rule of completeness does not give the declarant of an otherwise inadmissible out-of-court statement "an automatic right to insist that other parts be admitted too, simply because they are favorable to his position." *People v. Murray*, 2018 COA 102, ¶ 38 (citation omitted), *overruled on other grounds by People v. Vanderpauye*, 2023 CO 42.  Rather, the test is whether the excluded statement "ought in fairness to be considered contemporaneously with" admitted evidence.  CRE 106.

¶ 27    Here, the court properly recognized that whether the additional statement should be admitted depended on whether it was necessary to provide context.  This case is therefore unlike *McLaughlin*, ¶ 34, and *People v. Montoya*, 2024 CO 20, ¶ 52, where the trial courts abused their discretion by misapplying the law. Indeed, the trial court here applied the correct legal standard.  In doing so, it determined that — for purposes of fairness — Ramsey's statement that he just bought the car "yesterday" was not

12

necessary to "cure any misimpression" for the jury and his statement that he was thinking of selling it was complete in and of itself. Affording, as we must, a great measure of deference to the trial court's determination of admissibility under Rule 106, *see Montoya*, ¶ 57, we conclude the court did not abuse its discretion in making that factual determination.

## V. Expert Opinion Testimony

¶ 28 Ramsey next contends the trial court erred by admitting expert testimony that "the narcotics that were located in [his] vehicle were for possession with intent to distribute and not for personal use." He asserts this testimony was improper because it usurped the function of the jury. We disagree.

### A. Preservation

¶ 29 We review a preserved challenge to a trial court's admission of expert testimony for an abuse of discretion and reverse only if the error is not harmless. *People v. Baker*, 2021 CO 29, ¶¶ 29, 38. We review issues that were not preserved at trial for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. We only reverse under the plain error standard when the error is obvious and substantial. *Id.* An error is obvious when it contravenes Colorado case law. *People*

13

*v. Pollard*, 2013 COA 31M, ¶ 40.  It is substantial when it so undermined the fundamental fairness of the trial that it cast serious doubt on the reliability of the conviction.  *Id.* at ¶ 43.

¶ 30   The parties disagree whether this issue is preserved.  Because Ramsey's pretrial objection was based on different grounds than those raised on appeal, we conclude it is not.  *See People v. Ujaama*, 2012 COA 36, ¶ 37 (an issue is not preserved if the defendant does not object, objects on different grounds than those raised on appeal, or objects on unspecific grounds that do not alert the court to the particular issue for which review is sought).

¶ 31   Before trial, Ramsey moved to exclude the expert's testimony under CREs 701 and 702 on the basis that it would not be "helpful for the jury."  On appeal, he asserts that the expert's testimony was inadmissible because it usurped the function of the jury.  Ramsey asserts that because the testimony usurped the function of the jury it necessarily was not helpful and therefore his appellate argument is preserved.  We disagree.  Whether proposed testimony would be helpful to the jury presents an entirely different question than whether it usurps the jury's function.  Because Ramsey's objection did not state the grounds for reversal he urges on appeal, the trial

14

court never had an opportunity to rule on its propriety. *See id.* at ¶ 37. We therefore review for plain error. *See Hagos*, ¶ 14.

## B. Applicable Law and Discussion

¶ 32 Although an expert witness may provide testimony that embraces an ultimate issue of fact, an expert can't tell the jury what result to reach. *Baker*, ¶¶ 33-34; CRE 704. Thus, an expert opinion is improper if it applies the facts of the case to a particular legal standard in a way that tells the jury that the legal standard has been satisfied. *People in Interest of J.R.*, 2021 COA 81, ¶ 31.

¶ 33 To determine whether expert testimony has crossed the line, our supreme court has directed us to consider the nonexhaustive list of factors from *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011), including whether (1) the testimony was clarified on cross-examination, (2) the testimony expressed an opinion of the applicable law or legal standards thereby usurping the function of the court, (3) the jury was properly instructed on the law and that it may accept or reject the expert's opinion, and (4) the expert opined that the defendant committed the crime or that there was a particular likelihood that the defendant did so. *Baker*, ¶ 32 (applying the *Rector* factors).

15

¶ 34    We initially conclude that some of the *Rector* factors weigh against the testimony's admissibility.  Factor one suggests an error occurred because the expert's testimony was not clarified on cross-examination.  While the expert was cross-examined, the examination did not clarify the difference between his factual opinion and the legal conclusion that the drugs were possessed with the "intent to distribute."  *See J.R.,* ¶ 31 (an expert diagnosed the victim with "sexual abuse," but the "difference between legal and medical definitions of sexual abuse" was never clarified).

¶ 35    As to factor two, we believe it is a close call as to whether the testimony strayed into the realm of legal opinion.  On the one hand, the expert opined three times that the drugs in the car were for "possession with intent to distribute."  In so doing, he arguably testified that the evidence met the legal standard of "with intent." On the other hand, he did not (and was not asked to) read the legal definition of intent or to expressly apply the constellation of facts he had identified as supporting his opinion to that legal definition.

¶ 36    Even so, the question before us is not whether the testimony itself, when reviewed in isolation outside of relevant context, may have been improper.  Instead, we must decide whether the

testimony, considered in light of the totality of the nonexhaustive factors, usurped the function of the jury. We conclude it did not.

¶ 37 To reach that conclusion, we first conclude that factors three and four weigh against a finding of error. The court correctly instructed the jury on the legal definition of intent, as well as the fact that it could accept or reject an expert witness's testimony. *See Lawrence v. People*, 2021 CO 28, ¶ 53. Likewise, despite the expert's use of statutory language indicating that *one element* of possession with intent to distribute was met, nothing in his testimony suggested that Ramsey possessed the narcotics found in his vehicle or that he did so knowingly — both required elements under section 18-18-405(1)(a), C.R.S. 2024.

¶ 38 Moreover, although the expert used statutory language in rendering his opinion, the substance of his testimony was properly based on the evidence. The expert testified that, based on his expertise, the value of the drugs and the presence of cash, a scale, and a cutting agent in the car were common to see "in the drug distribution world." *See People v. Atencio*, 140 P.3d 73, 76 (Colo. App. 2005) (expert opinion testimony is admissible regarding facts that are "not necessarily within the scope of the ordinary layman's

knowledge and experience," including the quantity of drugs one would generally possess for personal use). To be sure, the better practice would have been for the prosecution to ask whether the evidence was "consistent with" an intent to distribute, as opposed to eliciting direct testimony that this element was met. But *Rector*'s totality of the circumstances test does not require the use of talismanic language to ensure expert opinion does not usurp the jury's function. Considering all of the factors together, we cannot conclude the expert's testimony strayed so far from factual opinion as to constitute error under *Rector*.

¶ 39    In reaching this conclusion, we recognize that some of the factors *Rector* instructs us to consider are events that occur *after* the disputed testimony and the trial court's assessment of admissibility. These factors are seemingly relevant not to whether there was error in the first instance, but to whether the error is reversible. In any event, while we conclude there was no error because the jury's function was not usurped in this case, we also conclude that any impropriety cannot have been plain error. In addition to the relevant circumstances discussed above, the expert also acknowledged on cross-examination that certain facts he

considered were not necessarily indicative of drug distribution.[4]

Moreover, the prosecutor did not rely on or even reference the disputed testimony during closing argument. Instead, he properly focused on the expert's testimony that there was "over a thousand dollars' worth of drugs in [the] car," arguing that it didn't make sense that someone other than Ramsey would have left them there. Accordingly, any impropriety in the expert's testimony did not cast serious doubt on the reliability of Ramsey's conviction. *See Hagos*, ¶ 14.

## VI. Natural Medicine Health Act

¶ 40 Finally, we agree with Ramsey that Prop 122 requires reversal of his psilocin conviction. Enacted in 2022, after Ramsey was convicted, Prop 122 provided that it is not an offense under state law for a person twenty-one years of age or older to possess psilocin for personal use or to give it away without remuneration to a person twenty-one years of age or older. Sec. 1, § 12-170-109(1)(a), 2023 Colo. Sess. Laws 3602. Prop 122 further provided that "[t]he

---

[4] For example, he testified that "a W-2 isn't necessarily indicative that [a] person isn't working"; that mushrooms, fentanyl pills, and cocaine can be consumed without paraphernalia; and that no small baggies for distribution were found in Ramsey's car.

removal and reduction of criminal penalties by this act is intended to have retroactive effect."  Sec. 1, § 12-170-115, 2023 Colo. Sess. Laws 3605.[5]

¶ 41 The Attorney General argues that the retroactive removal and reduction of penalties under Prop 122's section 12-170-115 do not apply to Ramsey's conviction because the legislature later repealed that provision.  *See* Ch. 249, sec. 14, § 12-170-115, 2023 Colo Sess. Laws 1388 (repealing section 12-170-115 and reenacting language not addressing retroactivity).  But the repeal and reenactment of this language was expressly prospective and does not apply to offenses committed before July 1, 2023.  Ch. 249, sec. 45, 2023 Colo. Sess. Laws 1424.  As noted, Prop 122 expressly applied retroactively.  Prop 122 became law upon the Governor issuing the proclamation of the vote on the measure, which

---

[5] Though the voters approved Prop 122 in the November 2022 election, the General Assembly repealed and reenacted the provisions during the next legislative session, expanding and relocating many of its significant elements.  *See* Ch. 249, 2023 Colo. Sess. Laws 1372-1424.  Due to the timing of these changes, the language of Prop 122 was never codified in either the 2023 or 2024 versions of the Colorado Revised Statutes.  Hence, all citations to the language of Prop 122 are to the Colorado Session Laws where it can be found.

occurred on December 27, 2022. 2023 Colo. Sess. Laws 3607. Thus, as of that date, individuals (like Ramsey) whose convictions involving psilocin were not yet final were entitled to the ameliorative effect of the new statute. *People v. Stellabotte*, 2018 CO 66, ¶ 38. And the General Assembly's subsequent removal of that ameliorative effect expressly applies only to defendants who possessed psilocin *after* July 1, 2023.

¶ 42    In sum, while "the general rule is that the date of the offense governs the applicable statute to be applied in charging the offense," *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007), this rule does not apply at the expense of the statute's plain language. *See People v. Butler*, 2017 COA 117, ¶ 25 (where a statute's plain language is clear and unambiguous, we must apply it as written).

¶ 43    Accordingly, we conclude that Prop 122 retroactively applies to Ramsey's psilocin conviction and, because finality has not yet attached to it, he is entitled to the benefit of that statute.

¶ 44    The Attorney General argues that possession of psilocin with intent to sell or distribute for remuneration is still a crime, even under Prop 122. That is true. *See* § 18-18-405(1)(a); § 18-18-434(5)(c)(II), C.R.S. 2024. But provided the person is over twenty-

one years old, possession with intent to distribute psilocin *without remuneration* is no longer an offense. § 18-18-434(5)(a). As it relates to the original charges, distribution means with or without remuneration, and the jury was so instructed. Thus, whether Ramsey intended to give away the psilocin found in his car (as opposed to sell it) is a question of fact that has not been decided. And Ramsey's inability to assert such a defense cannot have been harmless. We therefore reverse Ramsey's psilocin conviction and remand for a new trial.[6]

## VII. Disposition

¶ 45 The judgment is affirmed in part and reversed in part, and the case is remanded with directions.

JUDGE TOW and JUDGE SCHUTZ concur.

---

[6] We express no opinion regarding what evidence may be introduced or how it may be argued on retrial.